UNITED STATES of America, Appellee,

v.

Mack W. MILLER, Appellant.

No. 76–1568.

United States Court of Appeals,
Eighth Circuit.

Submitted Oct. 15, 1976.

Decided Dec. 15, 1976.

Phillip S. Resnick, Minneapolis, Minn., for appellant.

Francis X. Hermann, Asst. U. S. Atty., Minneapolis, Minn., for appellee.

Before VAN OOSTERHOUT, Senior Circuit Judge, HEANEY and BRIGHT, Circuit Judges.

VAN OOSTERHOUT, Senior Circuit Judge.

Defendant Mack W. Miller has taken a timely appeal from his conviction by a jury

upon Count II of an indictment charging receipt of a firearm by a previously convicted felon, the firearm having been transported in interstate commerce, in violation of 18 U.S.C. §§ 922(h) and 924(a). Defendant was sentenced to three years imprisonment.[1]

The critical issue presented is whether a frisk of defendant's person for weapons which resulted in the finding of a gun in defendant's possession comported with Fourth Amendment principles set forth in *Terry v. Ohio,* 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968). For the reasons hereafter set out, we hold that it did not and reverse the conviction.

The circumstances of the frisk were developed at a pretrial hearing and are substantially undisputed. Four St. Paul police officers in possession of a search warrant, the validity of which is not challenged and which authorized the search of a designated St. Paul residence for narcotics, arrived at the designated residence for the purpose of executing the warrant.

Upon entering the premises, the officers found the defendant and two women there, in the kitchen. Defendant and one of the women were sitting at the kitchen table. The other woman was standing. So far as the record discloses, the officers had no information whatsoever with respect to the defendant.

Officer Keith Miller testified at the suppression hearing that upon the officers' entry of the premises he was assigned to the task of watching the defendant. He testified:

I stood in the kitchen watching the defendant and the other two women who were seated at the kitchen table to make sure they stayed there, and that they didn't interfere with the search.

He testified that the other officers proceeded to search the premises for narcotics and that narcotics were discovered in the refrigerator after a search of ten or fifteen minutes, and that the defendant was not

interrogated or frisked until after the search. He further testified:

The younger woman wanted to go to the bathroom, and I told her at that time that she should remain seated and that the search would be completed shortly, and then she could do it at that time.

\*     \*     \*     \*     \*     \*

Mr. Miller said, "How long do I have to wait here," and he also said, "I am just here visiting this girl." He said both statements at different times during that ten- or fifteen-minute period.

\*     \*     \*     \*     \*     \*

After Sergeant Frank found the substance in the refrigerator, he walked over and asked me if I had any identification from Mr. Miller. I said no, I hadn't. He said, "I think we better do that now." I asked Mr. Miller for some identification, and I asked him to stand up, and because of the nature of how he was sitting at the table and his—he had a shirt on, a white, bluish print shirt that was hanging over his pants, and because of that and the nature of him wanting to get out of there, I became a little concerned with that.

A pat-down search of the defendant followed which led to the discovery of the gun here involved. The trial court overruled the motion to suppress the gun. In a memorandum opinion the court determined that no probable cause for arrest of the defendant existed prior to the discovery of the gun but that the record supported a frisk for possible weapons for the preservation of the safety of the officers under *Terry.* The trial court in its unreported memorandum opinion states:

The manner in which the defendant moved closer to the table, his eagerness to leave, his presence at a scene where contraband was found, and the manner in which he wore his shirt untucked are quite possibly insufficient indicators of wrongdoing to give rise to probable cause to arrest. But the Court cannot say that

---

1. Defendant was acquitted on Count I of the indictment and Count III was dismissed prior to trial. Such counts are not involved in this appeal.

a reasonably prudent man in the position of Patrolman Miller would not be warranted in the belief that his safety or the safety of his fellow officers was in danger, in light of these events. The cursory pat-down for possible weapons was proper under *Terry,* and the resulting seizure was not prohibited by the Fourth Amendment.

We completely agree with the finding that no probable cause for arrest was established prior to the frisk but disagree with the court's determination that a frisk for possible weapons for the safety of the officers was reasonable.

*Terry* holds that a stop and frisk is within the purview of the Fourth Amendment. Among other things, the *Terry* opinion holds:

It must be recognized that whenever a police officer accosts an individual and restrains his freedom to walk away, he has "seized" that person.

\*     \*     \*     \*     \*     \*

In this case there can be no question, then, that Officer McFadden "seized" petitioner and subjected him to a "search" when he took hold of him and patted down the outer surfaces of his clothing. We must decide whether at that point it was reasonable for Officer McFadden to have interfered with petitioner's personal security as he did. And in determining whether the seizure and search were "unreasonable" our inquiry is a dual one—whether the officer's action was justified at its inception, and whether it was reasonably related in scope to the circumstances which justified the interference in the first place.

\*     \*     \*     \*     \*     \*

And in justifying the particular intrusion the police officer must be able to point to specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant that intrusion.

*Terry* discusses in detail the importance of a person's Fourth Amendment rights and in setting out the narrow standards of a right to search for weapons, holds:

Our evaluation of the proper balance that has to be struck in this type of case leads us to conclude that there must be a narrowly drawn authority to permit a reasonable search for weapons for the protection of the police officer, where he has reason to believe that he is dealing with an armed and dangerous individual, regardless of whether he has probable cause to arrest the individual for a crime.

In *Terry,* the frisk took place immediately after the seizure. In our present case, the frisk took place at least ten minutes after the seizure. Upon the officers' entry upon the premises, they doubtless had a right to hold the defendant briefly for the purpose of questioning him with respect to his identity and the reason for his presence on the premises covered by the search warrant. Subsequent interrogation brought out his answer that he had arrived at the premises. shortly before the officers and that he was there for the purpose of visiting with one of the women who was a girl friend. The officers had no knowledge that he was there for any unlawful purpose.

As *Terry* emphasizes, the right to seize a person for questioning or any other purpose, absent probable cause for arrest, is a very limited one and a person should not be detained for such purpose longer than is reasonably necessary to accomplish the foregoing objective. No reason is asserted why the officers could not have interrogated the defendant immediately upon their entry upon the premises. No reasonable basis exists under the facts of this case to maintain the seizure for more than ten minutes.

The evidence introduced by the Government heretofore set out clearly discloses that the defendant was seized and wrongfully detained for an unnecessarily long period against his will. No cases have been cited, nor found by us, which in a stop and frisk situation authorize the holding of a person for a prolonged period. If the defendant had been permitted to leave as requested, no officers' security problem of

any kind would have been presented. We hold defendant's Fourth Amendment rights were violated by the seizure heretofore set out.

The Government does not challenge the trial court's determination that no probable cause for arrest existed at the time of the frisk. The right to frisk for weapons is based entirely on the Government's contention that it had established a reasonable basis for fear of the officers' safety. As shown by the trial court's memorandum, the court based justification on the frisk on four circumstances, to wit: (1) Defendant moved closer to the table; (2) defendant's eagerness to leave; (3) defendant's presence at the scene where contraband was found; and (4) his wearing of his shirt hanging over his trousers.

We do not see how any danger to the officers was created by defendant's moving nearer to the table. As to item (2), defendant's eagerness to leave is in accord with his Fourth Amendment rights and affords no basis for the officers' fear for their safety. On the contrary, such desire on the part of the defendant tends to negate any basis for any intention on the part of the defendant to harm the officers. As to item (3), defendant's presence at the scene where contraband was found, standing alone or in combination with the other circumstances, affords no reasonable basis for the officers' fear. It is not established that the two women found with the defendant in the kitchen were engaged in any unlawful business. In any event, *Sibron v. New York,* 392 U.S. 40, 62, 64, 88 S.Ct. 1889, 1902–1903, 20 L.Ed.2d 917 (1968), holds:

> The inference that persons who talk to narcotic addicts are engaged in the criminal traffic in narcotics is simply not the sort of reasonable inference required to support an intrusion by the police upon an individual's personal security.
>
>    *    *    *    *    *    *
>
> Before he places a hand on the person of a citizen in search of anything, he must have constitutionally adequate, reasonable grounds for doing so. In the case of the self-protective search for weapons, he

must be able to point to particular facts from which he reasonably inferred that the individual was armed and dangerous.

With respect to item (4), the wearing of a shirt over the trousers, is not a particularly unusual circumstance and affords little support for the belief on the part of the officers that defendant was armed and dangerous. We observe that the officers apparently found no occasion to frisk the defendant upon their arrival or during the ten or fifteen minute period consumed by the search. This materially weakens the officers' testimony that a reasonable basis existed on their part for fear of their safety. The only new event discovered by the officers with respect to defendant's conduct subsequent to the completion of the narcotics search was that his shirt was hanging over his trousers. The officers state that this was first discovered when defendant rose from his chair upon the officers' demand. There is no evidence that defendant reached for his pockets or made any threatening move.

We hold that under the facts of this case, the officers have failed to demonstrate that they had a reasonable basis for fear for their safety. We place considerable reliance on the fact that defendant's seizure had been maintained for a substantially longer period than authorized by *Terry* and that defendant in all probability would have left the premises prior to the frisk if the seizure had not been unreasonably prolonged.

We hold that the court committed prejudicial error in refusing to suppress the gun as evidence and admitting the gun in evidence, and that such error requires a reversal of defendant's conviction. The foregoing determination is dispositive of this appeal. Hence consideration of other errors asserted by the defendant would serve no useful purpose and are not reached.

Reversed and remanded.