**Richmond**

WILDA GAZNELLE LETT

v.

COMMONWEALTH OF VIRGINIA

No. 1275-86-2

Decided September 20, 1988

COUNSEL

Claire G. Cardwell for appellant.

H. Elizabeth Shaffer, Assistant Attorney General (Mary Sue Terry, Attorney General, on brief), for appellee.

OPINION

**BENTON, J.** — Wilda Gaznelle Lett was convicted in a bench trial of having a concealed weapon on her person in violation of Code § 18.2-308. She was sentenced to a thirty-day jail term, which was suspended, and to pay a $100 fine. Lett contends that evidence offered at trial to support the conviction was seized in violation of her fourth amendment rights, and that the trial judge erred in denying her motion to suppress. We conclude that the search and seizure of the purse in Lett's possession violated her fourth amendment rights; therefore, we reverse the conviction.

Detective Brian Gaudiouse testified that he and several other officers of the City of Richmond Police Department went to a boarding house on April 26, 1986, to execute a search warrant on room 1. The search warrant described the room's occupant as "a large black male in his forties." As Gaudiouse entered the boarding house from the rear, he saw William Wingfield, who matched the warrant description, and Lett exit a room into a dark hallway. When Gaudiouse identified himself as a police officer, Lett tried to push past him. Gaudiouse stopped her by grabbing the purse she was carrying. Lett turned and said, "I got to get out of here." She then entered room 3, which was lighted. Gaudiouse, still holding Lett's purse, followed as she "went back into the room." He discovered a .22 caliber pistol while searching Lett's purse and

placed her under arrest.

Gaudiouse further testified that he had not been looking for Lett and that she "just happened to be on the premises." Additionally, he testified that, although Lett never attempted to reach into her purse, he searched it to ensure personal safety:

We had information that there were drugs there, drugs and guns go together . . . . At that point it was for my protection because of the fact that we were coming out, we were coming in from both ways, she was in the hallway and somebody else was in the hallway and we just wanted to secure the scene and get the situation calmed down. I wanted to make sure that she didn't have any weapons and get behind me to hurt myself or any other officer.

The sole issue presented by Lett is the constitutional validity of the search of her purse. The Commonwealth contends that, although there was no probable cause to search Lett's purse prior to her arrest, the search was nonetheless justified under the authority of *Terry v. Ohio*, 392 U.S. 1 (1967), because, under the circumstances, a reasonably prudent police officer "would be warranted in the belief that his safety or that of others was in danger." *Id.* at 27. We hold that the circumstances did not warrant a search of Lett's purse.

"[T]he authority to conduct a pat-down search does not automatically accompany an investigative detention." *Williams v. Commonwealth*, 4 Va. App. 53, 66, 354 S.E.2d 79, 86 (1987); *Sibron v. New York*, 392 U.S. 40, 64 (1968); *United States v. Post*, 607 F.2d 847, 851 (9th Cir. 1979). *Ybarra v. Illinois*, 444 U.S. 85, 92-93 (1979), is the seminal case that addresses whether it is constitutionally permissible to stop and frisk a person present in a place where a search warrant is being executed. In *Ybarra*, the police searched a tavern and a bartender named "Greg." The search warrant was issued upon a reliable informant's assertion that he had on several occasions observed packets of heroin both behind the bar and on the person of the bartender and that the bartender would have heroin for sale on a specific date. During the execution of the search warrant, the police frisked each of the customers present in the tavern and found heroin on Ybarra, a patron of the bar.

In holding that the search of Ybarra was not supported by a reasonable belief that Ybarra was armed and presently dangerous, the Court stated:

> The *Terry* case created an exception to the requirement of probable cause, an exception whose "narrow scope" this Court "has been careful to maintain." Under that doctrine a law enforcement officer, for his own protection and safety, may conduct a patdown to find weapons that he reasonably believes or suspects are then in the possession of the person he has accosted. Nothing in *Terry* can be understood to allow a generalized "cursory search for weapons" or, indeed, any search whatever for anything but weapons. The "narrow scope" of the *Terry* exception does not permit a frisk for weapons on less than reasonable belief or suspicion directed at the person to be frisked, even though that person happens to be on premises where an authorized narcotics search is taking place.

*Id.* at 93-94 (citations omitted). The Court further stated that the following facts failed to support the existence of a reasonable belief or suspicion that Ybarra was armed and dangerous:

> Upon seeing Ybarra, [the police] neither recognized him as a person with a criminal history nor had any particular reason to believe that he might be inclined to assault them. Moreover, . . . Ybarra, whose hands were empty, gave no indication of possessing a weapon, made no gestures or other actions indicative of an intent to commit an assault, and acted generally in a manner that was not threatening.

*Id.* at 93.

The Commonwealth argues that this case is distinguishable from *Ybarra* and that the circumstances of this case reasonably led Gaudiouse to fear for his personal safety. Specifically, the Commonwealth relies on the following facts: (1) Lett's presence in a boarding house which contained a room that was subject to a search warrant; (2) Lett's presence in the company of an individual who matched the description of a person described in the warrant; (3) the inference that illegal drug activity is accompanied by dangerous behavior; (4) Lett's urgent attempt to leave after the officer identified himself; and (5) Lett tightly clutching her purse.

We conclude that none of these facts, alone or in combination, justified the search of Lett's purse.

The trial judge did not find that Lett was exiting room 1, which was the subject of the search warrant. Moreover, Gaudiouse's testimony does not provide a basis upon which the trier of fact could have concluded that Lett was exiting room 1. Although Gaudiouse testified that Lett came out of "the room," he also stated that when he stopped Lett she "went back into" room 3. Any doubt concerning the identity of "the room" is resolved by Gaudiouse's further testimony that he arrested Lett in "the room that they came out of." She was arrested in room 3.

The fact that Lett exited a room in a boarding house, accompanied by an individual who matched the description of the occupant of another room in the boarding house which was suspected to contain narcotics and which was the subject of a search warrant, afforded no reasonable basis for an officer to reasonably fear for his safety.

> The inference that persons who [are in the presence of] narcotic addicts are engaged in the criminal traffic in narcotics is simply not the sort of reasonable inference required to support an intrusion by the police upon an individual's personal security.

\* \* \* \*

> Before he places a hand on the person of a citizen in search of anything, he must have constitutionally adequate, reasonable grounds for doing so. In the case of the self-protective search for weapons, he must be able to point to particular facts from which he reasonably inferred that the individual was armed and dangerous.

*Sibron v. New York*, 392 U.S. at 62, 64; *see also Ybarra*, 444 U.S. at 92-94; *United States v. Vaughan*, 718 F.2d 332, 334-35 (9th Cir. 1983); *United States v. Miller*, 546 F.2d 251, 254 (8th Cir. 1976).

Furthermore, Lett's "eagerness to leave" the boarding house evidenced by her actions and statement, "I got to get out of here," are "in accord with [her] Fourth Amendment rights and affords

no basis for the officer['s] fear for [his] safety. [Furthermore,] . . . such desire on the part of [Lett] tends to negate any basis for any intention on the part of [Lett] to harm the officers." *Miller*, 546 F.2d at 254. The officers had no information or reason to believe that Lett was anything other than an innocent visitor. "If [Lett] had been permitted to leave as requested, no officers' security problem of any kind would have been presented." *Id.* at 253-54.

We also fail to perceive how any impression of danger to the officer was created by Lett's clutching her purse. Gaudiouse testified that Lett made no attempt to reach into her purse. Her conduct and his testimony are inconsistent with any reasonable inference that she would endanger officers' safety by withdrawing a weapon from her purse and are consistent with an inference that she intended to keep the contents of her purse within. Furthermore, although the record does not reflect the exact number of officers executing the search, the record makes apparent, by the fact that two officers were in room 3 with Lett, that there were enough officers to simply question Lett concerning her identity and, if necessary, survey Lett during a brief detention until the premises were secured. *Id.* at 253.

█ Gaudiouse further testified that he had not been looking for Lett and that she "just happened to be on the premises." He stated that he feared for his safety because he knew, as a police officer, that "drugs and guns go together." "But, a person's mere propinquity to others independently suspected of criminal activity does not, without more, give rise to probable cause to search that person." *See Ybarra*, 444 U.S. at 85. A drug investigation, even one conducted pursuant to the authority of a search warrant, is not a license to disregard the commands of the fourth amendment.

The circumstances suggest that Lett was exiting a room in the boarding house other than the room to be searched. After the detective identified himself, Lett was anxious to leave and apparently would have left the premises if Gaudiouse had not detained her. We conclude that the facts articulated on this record did not provide a lawful basis upon which to uphold Gaudiouse's decision to search Lett's purse.

We, therefore, conclude that the trial court erred in refusing to suppress the evidence obtained as a result of a search that violated

Lett's fourth amendment rights, and we reverse the conviction and dismiss the indictment.

*Reversed and dismissed.*

Duff, J., and Cole, J., concurred.