ANDRE LEON PRYOR

V.

COMMONWEALTH OF VIRGINIA

No. 1693-89-2

Decided September 21, 1993

COUNSEL

Jody Ann Jacobson, Assistant Public Defender (Russell C. Williams, Assistant Public Defender; David J. Johnson, Public Defender, on brief), for appellant.

Leah A. Darron, Assistant Attorney General (Mary Sue Terry, Attorney General, on brief), for appellee.

## UPON A REHEARING EN BANC

OPINION

**BAKER, J.**—On June 16, 1992, by an unpublished memorandum opinion, a panel of this Court affirmed the bench trial convictions of Andre Leon Pryor (appellant) by the Circuit Court of the City of Richmond (trial court) for possession of heroin and possession of a firearm while in possession of heroin. Upon rehearing *en banc,* we affirm the judgment of the trial court.

The panel majority concluded that this case was controlled by our *en banc* decision in *Bethea v. Commonwealth,* 14 Va. App. 474, 479 S.E.2d 249 (1992), *aff'd,* 245 Va. 416, 429 S.E.2d 211 (1993), and a panel decision in *Hatcher v. Commonwealth,* 14 Va. App. 487, 419 S.E.2d 256 (1992), which was based in substantial part on *Pennsylvania v. Mimms,* 434 U.S. 106 (1977).

■ Citing *Lansdown v. Commonwealth,* 226 Va. 204, 209, 308 S.E.2d 106, 110 (1983), *cert. denied,* 465 U.S. 1104 (1984), the Virginia Supreme Court stated in *Bethea:*

> [W]e need not determine whether the *de minimis* rationale utilized in *Mimms* is applicable to a passenger in a vehicle when the initial vehicle stop is predicated solely on matters pertaining to the driver. The facts of this case only require the application of the more general principle that Fourth Amendment interests are not violated when a police officer can "point to specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant that intrusion."

245 Va. at 419, 429 S.E.2d at 213.

The record before us discloses that two members of the City of Richmond Police Strike Force lawfully stopped a vehicle being driven by Arthur Lee Coleman, whom they knew to be a drug dealer with a reputation for violence involving firearms. The officers had information that Coleman was being "protected," considered him dangerous and believed that he might be carrying a firearm. They arrested him for driving after his license had been suspended and, incident to that arrest, began to search his car. To complete the search, they asked appellant, who was a front-seat passenger, to step out of the car. Appellant appeared nervous and indicated a desire to leave the scene. Officer Talbert, a member of the Police Strike Force, believed that

these circumstances required a pat-down search for weapons for safety reasons. During the search, he discovered a .44 Magnum "tucked in front of [appellant's] pants" and arrested him for unlawfully carrying a concealed weapon. Incident to that arrest, a thorough search of appellant was conducted and approximately twenty-seven packets containing heroin were found in appellant's pants pockets.

Without accepting or rejecting the reasons expressed in our decisions in *Bethea* and *Hatcher,* and the cases cited therein, we find that upon the totality of the circumstances shown by the evidence in the case before us, the officers did not violate appellant's Fourth Amendment rights.

Accordingly, the judgment of the trial court is affirmed.

*Affirmed.*

Moon, C.J., Barrow, J., Coleman, J., Willis, J., Elder, J., Bray, J., and Fitzpatrick, J., concurred.

Benton, J., with whom Koontz, J., joins, dissenting.

At 3:00 p.m., two police officers drove onto a residential street and observed a vehicle stopped in the travel lane. The officers approached the vehicle to speak to the driver, and, as they approached the vehicle, the officers recognized the driver as a person whose license had been suspended. They removed the driver from the vehicle, searched him, and arrested him for driving on a suspended operator's license. The officers testified that after they arrested the driver, the passengers in the vehicle wanted to exit the vehicle and leave. However, the officers required them to stay in the vehicle. The officers then began to search the inside of the vehicle while the three passengers were required to remain in the vehicle. As the officer who was searching the inside of the vehicle moved near Pryor's seat, he made Pryor exit the vehicle. Another police vehicle was present when the officer approached the vehicle and before Pryor was removed.

Pryor was searched. The officer who searched Pryor testified as follows:

Q   You don't know, or you didn't know Mr. Pryor at that time, did you?
A   No, ma'am, I did not.
Q   You were not aware of any outstanding warrants for his arrest?

A   No, ma'am.

Q   You were not aware of any illegal activity that he had engaged in at all?

A   No, ma'am.

Q   You did not see him do anything that looked illegal to you when he was sitting out in the car?

A   No, ma'am.

Q   You said that for your protection you had him get out of the car and you patted him down?

A   Well, I asked him to step out of the car to make room for Officer Vickers since he was performing a search of the vehicle. At that point for our own protection I wanted to pat him down.

Q   The only reason you removed him from the car was so Vickers could continue his search?

A   Yes, ma'am.

Q   With him out of the car you decided for your protection to be patted down?

A   Yes, ma'am.

When the officer began to search the back seat of the vehicle, the passengers on the back seat were also made to exit the vehicle. Those passengers were then searched for "safety."

It has long been established that "[b]efore [a police officer] places a hand on the person of a citizen in search of anything, [the officer] must have constitutionally adequate, reasonable grounds for doing so." *Sibron v. New York,* 392 U.S. 40, 64 (1968). A police officer who searches an individual "must be able to point to particular facts from which [the officer] reasonably inferred that the individual was armed and dangerous." *Id.* "[T]he authority to conduct a pat-down search does not automatically accompany an investigative detention." *Williams v. Commonwealth,* 4 Va. App. 53, 66, 354 S.E.2d 79, 86 (1987). "The detaining officer 'must have a particularized and objective basis for suspecting the *particular* person stopped of criminal activity.'" *Zimmerman v. Commonwealth,* 234 Va. 609, 612, 363 S.E.2d 708, 709 (1988) (quoting *United States v. Cortez,* 449 U.S. 411, 417-18 (1981)) (emphasis added). Moreover, it long has been established that "a person's mere propinquity to others independently suspected of criminal activity does not, without more, give rise to probable cause to search that person." *Ybarra v. Illinois,* 444 U.S. 85, 91 (1979) (citing *Sibron,* 392 U.S. at 62-63).

The arresting officer testified that he searched Pryor simply because he believed Pryor might want to leave and because Pryor seemed nervous. The arresting officer testified as follows:

Q   You know [the driver] and you believe him to be a dangerous person or possibly carry a firearm?
A   Yes, ma'am.
Q   You don't know Mr. Pryor?
A   No, ma'am.
Q   You don't have any reason to think that Mr. Pryor would be carrying a firearm from your own independent knowledge?
A   There are a lot of people that carry guns out there, but, no. No specific knowledge that he was carrying a gun, no.
Q   Or that he might be dangerous?
A   Not specific knowledge, no, ma'am.
Q   The only thing that you observed was he seemed to be nervous?
A   Yes, ma'am.

These reasons did not justify the detention and search of Pryor.

It is not abnormal behavior for a passenger in an automobile, or any other person, to be nervous when confronted by police officers. "When confronted with a traffic stop, it is not uncommon for drivers and passengers alike to be nervous and excited and to turn to look at an approaching police officer." *State v. Schlosser,* 774 P.2d 1132, 1138 (Utah 1989). In *Moore v. Commonwealth,* 12 Va. App. 404, 404 S.E.2d 77 (1991), this Court addressed the practice of searching citizens who appear to be nervous when confronted by the police.

[T]he sole fact upon which the officer based his justification for the pat-down search was that Moore appeared "very nervous." This nervousness was reflected by Moore's hands shaking and the stuttering and stammering of his words when he spoke to the officer. Other than this appearance of nervousness, the facts reflect a routine stop by the police for a speeding violation. The stop took place in the early afternoon and Moore was alone in his car. Moore made no attempt to evade the police. He made no unusual gestures to suggest that he might have a weapon on his person or within the car. Though the officer was aware Moore was under surveillance, the officer conceded he did not know why

> Moore was being watched and he did not know of any other reason to believe Moore might have been armed or dangerous. Finally, the officer admitted that it is common for a person to be nervous when stopped by the police. In short, the officer based the pat down on his subjective evaluation of the severity of Moore's nervousness. Based on this record, we hold that the officer lacked sufficient justification to conduct the pat-down search.

*Id.* at 406-07, 404 S.E.2d at 78. To permit a police officer to frisk a person because of nervousness is simply to allow "an individual's reasonable expectation of privacy [to be] subject to arbitrary invasions solely at the unfettered discretion of officers in the field." *Brown v. Texas,* 443 U.S. 47, 51 (1979).

The officer also expressed a concern because Pryor wanted to leave after the driver was arrested. In the absence of "'a reasonable suspicion, based on objective facts, that [Pryor was] involved in criminal activity,'" *Zimmerman,* 234 Va. at 611, 363 S.E.2d at 709 (quoting *Brown,* 443 U.S. at 51), Pryor had a right to leave. Pryor's desire to leave after the driver was arrested was "in accord with his Fourth Amendment rights and affords no basis for the officers' fear for their safety. [Furthermore,] . . . such desire [to leave] . . . tends to negate any basis for any intention on the part of [Pryor] to harm the officers." *United States v. Miller,* 546 F.2d 251, 254 (8th Cir. 1976). A police officer's observation that a person manifested an "eagerness to leave" a place once the officer arrived does not establish "constitutionally adequate, reasonable grounds" for conducting a search of that person. *Lett v. Commonwealth,* 7 Va. App. 191, 195, 372 S.E.2d 195, 197 (1988) (citation omitted).

Our case law affirmatively and unequivocally establishes that neither of these circumstances constitutes a basis upon which the officer could reasonably infer dangerousness. *See id.* at 195-96, 372 S.E.2d at 197-98; *Taylor v. Commonwealth,* 6 Va. App. 384, 389, 369 S.E.2d 423, 425 (1988) (en banc).

> Nothing is more clear than that the Fourth Amendment was meant to prevent wholesale intrusions upon the personal security of our citizenry, whether these intrusions be termed "arrests" or "investigatory detentions."

*Davis v. Mississippi,* 394 U.S. 721, 726-27 (1969).

Because this record provides no justification for either the detention or the search of Pryor, I would reverse the conviction and dismiss the indictment.