COURT OF APPEALS OF VIRGINIA

Present:  Chief Judge Moon, Judges Coleman and Bray
Argued at Norfolk, Virginia

ANTONIE CARUTH JONES, SOMETIMES KNOWN AS
 ANTOINE CARUTH JONES
                                           OPINION BY
v.          Record No. 1893-95-1     JUDGE RICHARD S. BRAY
                                         SEPTEMBER 3, 1996
COMMONWEALTH OF VIRGINIA


            FROM THE CIRCUIT COURT OF THE CITY OF NEWPORT NEWS
                       Verbena M. Askew, Judge

          George M. Rogers, III, for appellant.

          Brian Wainger, Assistant Attorney General
          (James S. Gilmore, III, Attorney General, on
          brief), for appellee.


     Antoine Caruth Jones (defendant) was convicted in a bench

trial for possession of cocaine with the intent to distribute.

Defendant complains on appeal that the trial court erroneously

admitted evidence resulting from an unlawful search and

challenges the sufficiency of the evidence to prove the requisite

knowledge and intent to distribute the offending drugs.  Finding

no error, we affirm the conviction.

     On December 14, 1994, Newport News police executed a search

warrant for an apartment occupied by Linda Williams.[1]  The

warrant sought evidence pertaining to a robbery and murder

unrelated to the instant offense, including "a handgun,

ammunition, gold ring . . ., cellular telephone and gold chain."

 When police entered the residence, defendant, then a visitor

seated in the "living room," and Ms. Williams were the only

_____
     [1]The validity of the warrant is not at issue.

persons present. While several officers searched "upstairs," Detective V. D. Williams and another officer "maintained visual observation" of defendant and Ms. Williams "downstairs."

Shortly after the search commenced, defendant asked Detective Williams for permission to leave the apartment. Because defendant "didn't have anything to do with the search warrant . . .," the detective agreed and defendant proceeded toward the door. It was a "cold day," and Ms. Williams reminded defendant, clad only in "pants and shirt," "Don't forget your jacket." Defendant then "turned around . . ., picked up [a] jacket" which was "laying across the back portion of a chair" located in the "center of the living room," and exited the apartment. Detective Williams quickly realized that the jacket, which was on the chair when the officers entered the residence, had not yet been searched and stopped defendant "five steps" beyond the threshold of the apartment. Defendant was holding the jacket in his hand, and the detective, after explaining the need to search it, "obtained" the jacket from him.

As Detective Williams began to search, defendant became "very fidgety" and "started towards the jacket," prompting the detective to "take a couple of steps back." Inside the left pocket, Detective Williams discovered "two tubes" containing crack cocaine concealed within a "black glove," but no paraphernalia with which to ingest the drug. A subsequent search of defendant's person incidental to arrest revealed $454 in a

trouser pocket.  Newport News Detective Richard Gaddis testified, without objection, as an "expert in reference to drugs and their sale and possession."  He noted that the cocaine was "cut" into "50 to 75 rocks," which "normally sold on the street individually, . . . [at] about 40 bucks a piece," having an aggregate weight of "approximately 25 grams" and total value of $2,500 to $3,000.  Gaddis opined that this quantity of "cut rocks" was inconsistent with the possession of crack cocaine for personal use.

Defendant testified that he had visited with Ms. Williams for only a "couple of minutes" prior to the arrival of the police.  He admitted ownership of the jacket, but denied knowledge of the cocaine, claiming the jacket had been in the residence for several days.  Defendant, then unemployed, explained that the cash was his "mother's rent money," which, though due on the "first of the month," remained in his possession on December 14 because "she trusts me."  At the conclusion of defendant's testimony, the trial court commented that it "just doesn't believe" defendant, that he "had no credibility."

## SUPPRESSION OF EVIDENCE

Upon appeal from a trial court's refusal to suppress evidence, we must review the record in the light most favorable to the prevailing party, the Commonwealth in this instance, granting to it all reasonable inferences fairly deducible

therefrom.  <u>Commonwealth v. Grimstead</u>, 12 Va. App. 1066, 1067, 407 S.E.2d 47, 48 (1991); <u>Reynolds v. Commonwealth</u>, 9 Va. App. 430, 436, 388 S.E.2d 659, 663 (1990).  The findings of the court will not be disturbed unless "plainly wrong," <u>Grimstead</u>, 12 Va. App. at 1067, 407 S.E.2d at 48, and the burden is upon the appellant to show that the disputed ruling constituted reversible error.  <u>Reynolds</u>, 9 Va. App. at 436, 388 S.E.2d at 663.

It is uncontroverted that the jacket was resting on a chair located in the living room when the police entered the apartment, and defendant conceded that it was subject to search under authority of the warrant.  Nevertheless, relying upon <u>Lett v. Commonwealth</u>, 7 Va. App. 191, 372 S.E.2d 195 (1988), he contends that, once police permitted him to take possession of the jacket and remove it from the premises, "there was no probable cause to search" the garment.[2]  However, defendant's argument overlooks evidence that Detective Williams authorized defendant to leave the apartment before defendant claimed or obtained possession of the jacket.  Defendant's attention was first directed to the jacket by Ms. Williams after the detective had acceded to his request.  Within moments thereafter, Detective Williams recalled that the jacket had not been searched and stopped defendant, then only a few steps beyond the apartment door, for that purpose.

---

[2]In <u>Lett</u>, the accused was in actual possession of a pocketbook upon the arrival of police to execute a search warrant and successfully challenged its search pursuant to the warrant or otherwise.  <u>See</u> <u>Terry v. Ohio</u>, 392 U.S. 1 (1967).

Defendant's implicit assertion that the authority of the search warrant dissipated with his exit from the apartment is without merit. It is well established that "[a] lawful search of premises described in a warrant 'extends to the entire area in which the object[s] of the search may be found . . . .'" Kearney v. Commonwealth, 4 Va. App. 202, 205, 355 S.E.2d 897, 899 (1987) (quoting United States v. Ross, 456 U.S. 798, 820-21 (1982)). "'[A] search may be as extensive as reasonably required to locate the items described in the warrant.'" Id. (citation omitted). "A warrant to search a [premises] would support a search of every part of the [premises] that might contain the object of the search." Ross, 456 U.S. at 821. Moreover, "a warrant to search . . . carries with it the limited authority to detain the occupants of the premises while a proper search is conducted." Michigan v. Summers, 452 U.S. 692, 705 (1981). Thus, once the police have initiated a search pursuant to a warrant, persons may not subvert its lawful purposes by removing articles properly within its scope.

Here, in executing the search warrant of Ms. Williams' residence, the police were directed to a handgun, ammunition, a gold ring, a cellular telephone, and a gold chain. The jacket in issue was initially "bereft of any external indicia of ownership," clearly a "plausible repository" for those items sought by the police and, concededly, subject to search while it remained within the apartment. See United States v. Gray, 814

- 5 -

F.2d 49, 51 (1987).  Under such circumstances, it would be absurd to later exclude the jacket from the embrace of the warrant simply because defendant was inadvertently allowed to carry it a few feet beyond the entryway.

Accordingly, we find that a search of defendant's jacket was within the ambit of the warrant, and the trial court properly admitted the attendant evidence.

## SUFFICIENCY OF EVIDENCE

Defendant further contends that the evidence is insufficient to support his conviction.  Under familiar principles of appellate review, we examine the evidence in the light most favorable to the Commonwealth, granting to it all reasonable inferences fairly deducible therefrom.  Martin v. Commonwealth, 4 Va. App. 438, 443, 358 S.E.2d 415, 418 (1987).  The judgment of a trial court, sitting without a jury, is entitled to the same weight as a jury verdict and will be disturbed only if plainly wrong or without evidence to support it.  Id.  "The weight which should be given to evidence and whether the testimony of a witness is credible are questions which the fact finder must decide."  Bridgeman v. Commonwealth, 3 Va. App. 523, 528, 351 S.E.2d 598, 601 (1986).

Defendant's conviction required the Commonwealth to prove that he "'intentionally and consciously possessed' the drug, either actually or constructively, with knowledge of its nature and character, together with the intent to distribute it."

Wilkins v. Commonwealth, 18 Va. App. 293, 298, 443 S.E.2d 440, 444 (1994) (quoting Josephs v. Commonwealth, 10 Va. App. 87, 99-102, 390 S.E.2d 491, 497-99 (1990) (en banc)).  "Because direct proof of [the] intent [to distribute] is often impossible, it must be shown by circumstantial evidence."[3]  Servis v. Commonwealth, 6 Va. App. 507, 524, 371 S.E.2d 156, 165 (1988).  Circumstances relevant to proof of an intent to distribute include the "quantity of drugs and cash possessed, the method of packaging, and whether [defendant] himself used drugs."  Poindexter v. Commonwealth, 16 Va. App. 730, 735, 432 S.E.2d 527, 530 (1993).

When the police initially entered the apartment, the jacket was draped over a living room chair.  Although defendant was dressed only in "pants and a shirt" and it was "cold outside," he clearly intended to leave without his jacket.  Once reminded of the jacket, however, defendant acknowledged ownership and took possession of it.  When confronted by the detective, he became "fidgety" and moved toward the jacket during the search.  From such evidence, the trial court properly inferred that defendant entered the residence wearing the jacket and removed and placed it on the chair.  Later, the police entered the premises and defendant, aware of the presence and nature of the contraband

_____

[3]"Circumstantial evidence . . . is evidence of facts or circumstances not in issue from which facts or circumstances in issue may be inferred."  Charles E. Friend, The Law of Evidence in Virginia, § 12-1 (4th ed. 1993).

concealed within, attempted to disassociate himself from it.  The record further established that the "cut" and quantity of cocaine were inconsistent with personal use, and no evidence suggested that defendant was a cocaine user.  Moreover, the cash discovered on defendant's person and his untruthfulness to both police and the court were indicative of guilt.

Thus, sufficient evidence in the record supports the finding that defendant consciously possessed the cocaine, aware of its nature and character, together with the requisite intent to distribute.

Accordingly, we affirm the conviction.

<u>Affirmed.</u>