# COURT OF APPEALS OF VIRGINIA

Present:  Judges Fulton, Ortiz and Raphael
Argued at Norfolk, Virginia


MICHAEL ALEXANDER PALMER

v.       Record No. 0885-21-1

COMMONWEALTH OF VIRGINIA

MEMORANDUM OPINION* BY
JUDGE DANIEL E. ORTIZ
AUGUST 9, 2022

FROM THE CIRCUIT COURT OF THE CITY OF HAMPTON
Michael A. Gaten, Judge

(Joshua A. Goff; Goff Voltin, PLLC, on brief), for appellant.
Appellant submitting on brief.

Ken J. Baldassari, Assistant Attorney General (Jason S. Miyares,
Attorney General, on brief), for appellee.


Michael Alexander Palmer was convicted of six counts of possession with intent to

distribute cocaine after a confidential informant purchased cocaine from him or an associate

during six separate controlled buys over the course of a month.  Palmer assigns error to three of

the circuit court's decisions, two of which relate to only one of the buys.  Palmer argues that the

circuit court erred in (1) denying his motion to strike the evidence relating to the controlled buy

on July 25, 2019 (third controlled buy) because the evidence failed to show he distributed

cocaine, (2) admitting testimonial hearsay statements relating to the third controlled buy in

violation of the Sixth Amendment's Confrontation Clause and the rule against hearsay, and

(3) denying the motion to dismiss all six counts after Palmer's statutory speedy trial rights were

violated.  Yet the evidence sufficiently supported Palmer's conviction for the third controlled

---

* Pursuant to Code § 17.1-413, this opinion is not designated for publication.

buy, the statements were not testimonial hearsay, and his statutory speedy trial rights had been either waived or tolled.  Thus, we affirm Palmer's convictions.

BACKGROUND

In July and August 2019, the Hampton Police Division provided a confidential informant money to purchase cocaine in six controlled buys on July 15, 23, 25, and 29, and August 6 and 15.  The police orchestrated the controlled buys to focus on Palmer.  Before each controlled buy, the police followed protocols to ensure that the informant purchased the cocaine from Palmer.  Each time, the police searched the informant's vehicle before and after the buy, provided her with video and audio surveillance equipment, and monitored the entire buy from start to finish.  Once the police were ready, the informant would call Palmer while the police listened.  The informant called the same number for every controlled buy, which police records showed was Palmer's number.  The informant and every officer surveilling the buy were shown a recent photograph of Palmer before each buy.  On all but one occasion, Palmer personally delivered the cocaine to the informant.  Yet during the third controlled buy, a woman claiming Palmer sent her delivered the cocaine.

The third controlled buy proceeded much like the other buys.  Before the controlled buy, the law enforcement officers searched the informant's vehicle, gave her money and surveillance equipment, and showed her Palmer's photograph.  They then conducted the controlled call, and Palmer answered and instructed the informant to go to a local restaurant.  Once the informant arrived, a second call occurred and a female voice told the informant to go to a 7-Eleven.  When the informant arrived at the 7-Eleven, she texted Palmer and asked where he was.  She was then approached by a woman she did not know, later identified as Courtney Bond.

The informant initially refused to purchase cocaine from Bond because she did not know her.  The informant texted Palmer after he did not answer her phone call and told him she would

not talk to Bond. Palmer texted the informant, "Go ahead and deal with [Bond]. She's okay. She's with me." Palmer also told the informant that Bond was "his b****." Once both Palmer and Bond assured the informant that Bond was with Palmer and Palmer had packaged the cocaine, the informant bought it. After the buy, a detective saw Bond meet up with Palmer. The police conducted three more controlled buys until indictments were issued for Palmer for six counts of distribution of a controlled substance.[1]

Palmer was arrested on September 22, 2019, and remained in custody until his trial on June 14, 2021. On October 4, 2019, the circuit court appointed counsel for Palmer through the Public Defender's Office, and the circuit court continued the case to October 15, 2019, to select a trial date. Palmer's counsel agreed to the continuance. Before the October 15 hearing, the Public Defender's Office discovered a conflict. The circuit court appointed new counsel at the October 15 hearing. The circuit court then continued the case to October 28, 2019, to set a trial date. Palmer did not object to the continuance.

On October 28, the circuit court continued the case for another nine days because Palmer's newly appointed counsel did not appear at the hearing. At that October 28 hearing, Palmer asked the circuit court to waive his appearance at the next hearing, stating, "I'm sure [my attorney] can get with the Commonwealth and set a date up mutually." The circuit court granted Palmer's request. Palmer then asked whether the time for the new continuance fell to him or the Commonwealth for speedy trial calculations. The circuit court declined to rule on the speedy trial calculation issue but noted that "when [it] ha[sn't] heard anything from the attorney, it would be difficult for them to say that the delay was due to the Commonwealth." Palmer acknowledged this answer and did not object to the continuance.

---

[1] Although Palmer was indicted for distribution, the circuit court ultimately convicted him of six counts of possession with the intent to distribute cocaine.

In a very brief hearing on November 6, 2019, in which both the Commonwealth and Palmer's counsel were present, the Commonwealth told the circuit court that "[t]he attorneys have picked April 16th and 17th[, 2020,] for a jury" trial date. Palmer's counsel did not object to this date. Before the April trial date, the circuit court continued Palmer's trial over his objection due to the COVID-19 pandemic. The circuit court continued Palmer's trial twice thereafter. Palmer objected to one of those continuances. At a motions hearing on January 22, 2021, Palmer moved to dismiss the case on speedy trial grounds. The circuit court denied the motion. The circuit court then continued the trial to Saturday, June 12, 2021. On June 14, 2021, Palmer's trial began.

As a preliminary matter at trial, Palmer's counsel moved to reconsider the circuit court's denial of his motion to dismiss for a speedy trial violation. The circuit court denied Palmer's motion to reconsider, finding that Palmer's statutory speedy trial right had not been violated. The Commonwealth then presented evidence on all six counts.

During the trial, the informant testified about each controlled buy. When discussing the third controlled buy, the informant testified that she refused to buy the cocaine from Bond at first. Instead, when Bond arrived at the 7-Eleven and approached the informant's vehicle, the informant told Bond "I don't know you and I'm not getting anything from you. Who are you?" Bond responded that Palmer sent her. Bond told the informant that Palmer "bagged [the cocaine] up." Palmer's counsel objected to this testimony, arguing it was testimonial hearsay and that Palmer had no opportunity to confront Bond about her statements.[2] The circuit court overruled the objection after the Commonwealth argued that it was a co-conspirator's statement in furtherance of a conspiracy. At the close of the Commonwealth's evidence, Palmer's counsel moved to strike the evidence as to the third controlled buy count. He argued that no evidence

---

[2] Bond did not testify at the trial.

proved Palmer sold the cocaine or that Bond and Palmer conspired to do so. Further, there was a reasonable hypothesis of innocence that Palmer gave Bond the cocaine as an accommodation. The circuit court denied the motion. Palmer presented no evidence and again moved to strike the evidence, which the circuit court denied.

The circuit court found Palmer guilty on all six counts and sentenced him to eight years' active incarceration. This appeal followed.

ANALYSIS

A. Standard of Review

Whether evidence is admissible "generally lie[s] within the trial court's sound discretion and will not be disturbed on appeal absent an abuse of [that] discretion." *Jasper v. Commonwealth*, 49 Va. App. 749, 754 (2007) (second alteration in original) (quoting *Breeden v. Commonwealth*, 43 Va. App. 169, 184 (2004)). Yet whether evidence is "'testimonial hearsay' . . . is a question of law reviewed *de novo*." *Id.* at 755 (alteration in original) (quoting *Michels v. Commonwealth*, 47 Va. App. 461, 465 (2006)).

We review a challenge to the sufficiency of the evidence in the light most favorable to the prevailing party below and accord to that party "the benefit of all inferences fairly deducible from the evidence." *Bolden v. Commonwealth*, 275 Va. 144, 148 (2008). We will only reverse a conviction if it was "plainly wrong or without evidence to support it." *Id.* In reviewing a sufficiency challenge, "we do not substitute our own judgment for that of the factfinder." *Pulley v. Commonwealth*, 74 Va. App. 104, 123 (2021), *petition for reh'g filed*, No. 220070 (Va. June 2, 2022). Sufficiency of the evidence challenges come down to "whether '*any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.'" *Id.* (quoting *Mollenhauer v. Commonwealth*, 73 Va. App. 318, 333 (2021)). Lastly, "[w]hether an alternative hypothesis of innocence is reasonable is a question of fact and, therefore, is binding on appeal

unless plainly wrong." *Archer v. Commonwealth*, 26 Va. App. 1, 12-13 (1997) (citation omitted).

Finally, "[a] statutory speedy trial challenge presents a mixed question of law and fact." *Ali v. Commonwealth*, 75 Va. App. 16, 29 (2022) (quoting *Young v. Commonwealth*, 297 Va. 443, 450 (2019)), *petition for appeal filed*, No. 220393 (Va. June 30, 2022). Thus, we review legal questions *de novo*, while deferring to the circuit court's factual findings. *Id.*

### B. Bond's Statements as Testimonial Hearsay

Palmer contends that the circuit court erred in admitting Bond's statements to the informant because the statements were inadmissible testimonial hearsay and Palmer did not have an opportunity to confront Bond about them. But the statements were admissible as an exception to the hearsay rule allowing co-conspirator statements made in furtherance of a conspiracy and were not testimonial. Thus, the Confrontation Clause's protections did not apply, and the circuit court did not err in admitting the statements.

The Sixth Amendment's Confrontation Clause "guarantees that a criminal defendant will have the opportunity 'to be confronted with the witnesses against him.'" *Cody v. Commonwealth*, 68 Va. App. 638, 657 (2018) (quoting U.S. Const. amend. VI). But "the Confrontation Clause applies only to 'testimonial' statements." *Id.* Testimonial statements are the "sort [that] cause the declarant to be a 'witness.'" *Davis v. Washington*, 547 U.S. 813, 821 (2006). When determining whether a statement is testimonial, we objectively evaluate all relevant circumstances "in which the encounter occur[ed] and the statements and actions of the parties." *Adjei v. Commonwealth*, 63 Va. App. 727, 744 (2014) (alteration in original) (quoting *Michigan v. Bryant*, 562 U.S. 344, 359 (2011)). Yet many "hearsay exceptions 'cover[] statements that by their nature [are] not testimonial—for example, business records or *statements in furtherance of a conspiracy*.'" *Pulley*, 74 Va. App. at 122 (alterations in original) (quoting

- 6 -

*Crawford v. Washington*, 541 U.S. 36, 56 (2004)).  Thus, if Bond's statements were in furtherance of a conspiracy, they are not testimonial under the Confrontation Clause.

The hearsay rule does not exclude a "statement by a co-conspirator of a party during the course and in furtherance of the conspiracy" even if the declarant is available as a witness.  Va. R. Evid. 2:803.  To admit a co-conspirator's statement, the Commonwealth must establish "a *prima facie* case of conspiracy . . . independent of the [hearsay] declarations themselves." *Rabeiro v. Commonwealth*, 10 Va. App. 61, 63 (1990).  Prima facie evidence is "evidence which on its first appearance is sufficient to raise a presumption of fact or establish the fact in question unless rebutted." *Wilkerson v. Commonwealth*, 33 Va. App. 808, 820 (2000) (quoting *Babbitt v. Miller*, 192 Va. 372, 379-80 (1951)).  We consider whether the evidence sufficiently established the existence of a conspiracy in the light most favorable to the Commonwealth.  *Rabeiro*, 10 Va. App. at 64.  "On factual issues relating to the admissibility of evidence, the burden of persuasion is proof by a preponderance of the evidence."  *Id.* at 64-65.

"Conspiracy is an agreement between two or more persons by some concerted action to commit an offense."  *Id.* at 66 (quoting *Falden v. Commonwealth*, 167 Va. 542, 544 (1937)).  The existence of a conspiracy "can be inferred from . . . overt conduct." *Poole v. Commonwealth*, 7 Va. App. 510, 513 (1988) (alteration in original) (quoting *United States v. Harris*, 433 F.2d 333, 335 (4th Cir. 1970)).  A factfinder may conclude that a conspiracy existed where the Commonwealth shows "that the defendants 'by their acts pursued the same object, one performing one part and the others performing another part so as to complete it or with a view to its attainment.'"  *Pulley*, 74 Va. App. at 120 (quoting *Carr v. Commonwealth*, 69 Va. App. 106, 118 (2018)).

Bond's statements alone cannot prove the conspiracy existed.  Yet circumstances and acts outside of those statements established that Palmer and Bond conspired to distribute cocaine.

Palmer orchestrated and coordinated the buy with the informant, and he told the informant where to go. Bond did not appear at the informant's vehicle until after the informant texted Palmer that she had arrived. The informant refused to buy the cocaine from Bond until Palmer reassured her that Bond was working with him. A detective then saw Bond and Palmer meet up shortly after the sale. Further, the informant purchased drugs twice from Palmer directly in the ten days before the third controlled buy, using a nearly identical process. All of these circumstances showed that Palmer and Bond pursued the same object, that is, cocaine distribution, and took steps to achieve it. As a result, the Commonwealth sufficiently proved a prima facie case that a conspiracy between Bond and Palmer existed. Thus, Bond's statements were admissible as co-conspirator statements in furtherance of a conspiracy and were, by nature, nontestimonial. In sum, this Court affirms the circuit court's admission of Bond's statements.

## C. Sufficiency of the Evidence for the Third Controlled Buy

Palmer argues that the circuit court erred in denying his motion to strike the evidence on the third controlled buy count because the evidence merely revealed suspicious circumstances and the circuit court ignored a reasonable hypothesis of innocence. He contends that the evidence only showed that Bond sold the cocaine to the informant and Bond and Palmer met up shortly after the sale. These circumstances, while suspicious, fail to prove he committed the crime. Moreover, even if the circuit court credited the inadmissible statements Bond made to the informant, it overlooked a reasonable hypothesis of innocence that Palmer gave Bond the cocaine as an accommodation and she sold it without his knowledge.

We disagree with Palmer and find that the evidence sufficiently proved Palmer possessed the cocaine with the intent to distribute.

To convict a defendant of possession of a controlled substance with intent to distribute, the Commonwealth must prove that the defendant "'intentionally and consciously possessed' the

drug, either actually or constructively, with knowledge of its nature and character, together with the intent to distribute it." *Jones v. Commonwealth*, 23 Va. App. 93, 95, 100-01 (1996) (quoting *Wilkins v. Commonwealth*, 18 Va. App. 293, 298 (1994)). "Constructive possession may be shown by defendant's acts, declarations or conduct which support the inference that the contraband was 'subject to his dominion or control.'" *Wilkins*, 18 Va. App. at 298 (quoting *Josephs v. Commonwealth*, 10 Va. App. 87, 99 (1990) (en banc)). Because directly proving intent is often impossible, the Commonwealth must demonstrate it with circumstantial evidence that is "consistent with guilt and inconsistent with innocence and exclude[s] every reasonable hypothesis of innocence." *Servis v. Commonwealth*, 6 Va. App. 507, 524 (1988) (quoting *Wells v. Commonwealth*, 2 Va. App. 549, 551 (1986)).

Moreover, in felony cases, "every principal in the second degree and every accessory before the fact" may be convicted as if "a principal in the first degree," except in certain murder cases. Code § 18.2-18. To prove a defendant is a principal in the second degree, the Commonwealth must show (1) the defendant consented to the crime's purpose and (2) "his words, gestures, signals or actions" encouraged or helped "the person committing the crime to commit it." *Ramsey v. Commonwealth*, 2 Va. App. 265, 269 (1986); *Hall v. Commonwealth*, 225 Va. 533, 536 (1983).

Despite Palmer's arguments to the contrary, the record contains ample evidence to support the circuit court's finding that Palmer possessed the cocaine with the intent to distribute it as a principal in the second degree. Palmer's recitation of the facts omits that the informant called his number to set up the controlled buy, he told the informant where to get the cocaine, and he assuaged the informant's concerns about Bond. In fact, the informant refused to buy from Bond until Palmer assured her that he had sent Bond. Further, the informant identified Palmer as the person she spoke to on the phone to coordinate the buy and as the person she had purchased

drugs from directly two days earlier. Bond also told the informant that Palmer had sent her, and Palmer bagged the cocaine himself. As described in section B, those statements were admissible, and the circuit court could properly consider them. Overall, Palmer's acts and declarations show that he controlled the cocaine, and thus constructively possessed it with the intent to distribute it. Thus, the Commonwealth presented extensive evidence that Palmer intended his words or actions to advise and help Bond commit the crime.

Lastly, Palmer's reasonable hypothesis of innocence argument fails because no evidence in the record shows that he gave Bond an accommodation. Even overlooking the evidence that Palmer orchestrated the buy, Palmer failed to meet his burden of proving an accommodation in the circuit court. A defendant has the burden of proving by a preponderance of the evidence that he provided an accommodation, that is, distributed drugs "motivated by a desire to accommodate a friend, without any intent to profit or to induce or to encourage the use of drugs." *Winston v. Commonwealth*, 16 Va. App. 901, 905 (1993) (quoting *Stillwell v. Commonwealth*, 219 Va. 214, 219 (1978)). Palmer did not put on any evidence at trial that he gave Bond the cocaine as an accommodation. Thus, Palmer's argument fails.

In sum, a reasonable factfinder could have found sufficient evidence to convict Palmer for possession with an intent to distribute cocaine. Therefore, the circuit court did not err in denying Palmer's motion to strike and we affirm Palmer's conviction for the third controlled buy.

### D. Palmer's Statutory Speedy Trial Challenge

Palmer argues that he was incarcerated for a period well over the speedy trial statutory maximum, despite his objections. But most of the 631 days between Palmer's arrest and trial can be attributed either to Palmer's own agreement or the judicial emergency's tolling of the

- 10 -

statutory deadline. As a result, the circuit court did not err in denying Palmer's motion to dismiss based on statutory speedy trial grounds.

Relevant here, a trial must commence within five months from the defendant's date of arrest if the defendant is accused of a felony, was not arrested until after an indictment issued, and was held in custody continuously after his arrest. Code § 19.2-243. "The five month requirement of Code § 19.2-243 translates to 152 and a fraction days." *Ballance v. Commonwealth*, 21 Va. App. 1, 6 (1995). "If a defendant is not tried within the time specified in Code § 19.2-243, the burden is on the Commonwealth to explain the delay." *Godfrey v. Commonwealth*, 227 Va. 460, 463 (1984).

"The Commonwealth must prove that the delay was based on 'one of the reasons enumerated in [Code § 19.2-243] or on appellant's waiver, actual or implied, of his right to be tried within the designated period." *Baker v. Commonwealth*, 25 Va. App. 19, 22 (quoting *Norton v. Commonwealth*, 19 Va. App. 97, 99 (1994)), *aff'd*, 26 Va. App. 175, 176 (1997) (en banc). Generally, the time between the probable cause finding or arrest and the initial trial date is not a continuance and counts against the Commonwealth for speedy trial purposes. *Turner v. Commonwealth*, 68 Va. App. 72, 79 (2017). Further, "[a] defendant does not waive his right to a speedy trial merely because he remains silent or does not demand that a trial date be set within the prescribed period." *Godfrey*, 227 Va. at 463. Nor does a defendant waive his speedy trial right when his counsel provided dates outside the statutory period after the trial court granted the Commonwealth's continuance motion over the defendant's objection. *Baker*, 25 Va. App. at 20-21, 25 (reasoning that supplying the trial court with available trial dates was not the defendant concurring to the requested continuance).

But a defendant's agreement with or failure to object to a court setting a trial date outside the statutory speedy trial period "constitutes a continuance of the trial date under Code

§ 19.2-243(4)." *Heath v. Commonwealth*, 261 Va. 389, 394 (2001); *Commonwealth v. Hutchins*, 260 Va. 293, 298 (2000). Moreover, Code § 19.2-243's restrictions do not apply to speedy trial deadline calculations when a defendant or his counsel requests the continuance, concurs to the Commonwealth's continuance motion, or fails to timely object to that motion. Code § 19.2-243(4). Either a defendant or his counsel may waive his statutory speedy trial right. *McCray v. Commonwealth*, 44 Va. App. 334, 342 (2004). Further, this Court has charged to a defendant the delay between appointing new counsel for the defendant and the new trial date. *Ballance*, 21 Va. App. at 6. Additionally, we recently concluded that the judicial emergency orders based on the COVID-19 pandemic tolled statutory speedy trial deadlines under Code § 19.2-243(7), beginning March 16, 2020, and continuing through June 22, 2022. *See Ali*, 75 Va. App. at 30; *In re:* Fortieth Order Extending Declaration of Judicial Emergency in Response to COVID-19 Emergency (Va. May 27, 2022); *In re:* Order Declaring a Judicial Emergency in Response to COVID-19 Emergency (Va. Mar. 16, 2020).

In assessing statutory speedy trial violation claims, "we will confine our review to the record that comes before us" which "must reflect the reason for any delay of defendant's trial." *Godfrey*, 227 Va. at 463-64. Under Code § 19.2-243, Palmer's September 22, 2019 arrest triggered the speedy trial clock. Between Palmer's arrest and his trial on June 14, 2021, 631 days elapsed. In calculating the time, twelve days were attributed to the Commonwealth for the time between Palmer's arrest and the first hearing where Palmer had counsel appointed. Then, Palmer's counsel concurred to an eleven-day continuance between October 4, 2019, and October 15, 2019. After new counsel was appointed, Palmer did not object to the thirteen-day continuance from October 15 to October 28, 2019. Though Palmer questioned the circuit court

at the October 28 hearing about the speedy trial time calculation when his counsel failed to appear, he did not object to the following nine-day continuance.[3]

On November 6, 2019, Palmer's counsel and the Commonwealth set the trial for April 16, 2020, which was outside the statutory speedy trial period. Under Code § 19.2-243(4) and *Hutchins*, 260 Va. at 298, Palmer concurred to the 162-day continuance because his counsel concurred to a trial date outside the statutory speedy trial deadline.[4] Finally, between April 16, 2020, and Palmer's trial on June 14, 2021, 424 days of the statutory speedy trial calculations were tolled by the judicial emergency. Thus, twelve days were attributed to the Commonwealth between Palmer's arrest and the first hearing where Palmer had counsel appointed. Palmer then either agreed to or did not object to continuances for 195 days between the first hearing and the original trial date. For the remaining 424 days, the Commonwealth proved that the delay was based on a reason outlined in Code § 19.2-243: the judicial emergency resulting from the COVID-19 pandemic. Factoring in Palmer's agreed-to continuances and the tolled speedy trial deadline, 619 of the 631 days between Palmer's arrest and his trial did not count against the Commonwealth for purposes of speedy trial calculations.

CONCLUSION

Overall, Bond's statements were not testimonial hearsay because they were co-conspirator's statements made in furtherance of the conspiracy, the evidence was sufficient to convict Palmer of possession with the intent to distribute cocaine for the third controlled buy,

---

[3] Even if we attributed these two continuances to the Commonwealth as an unexcused delay due to Palmer's lack of counsel, the days would come nowhere near the speedy trial deadline.

[4] Absent Palmer's presence in the courtroom and a colloquy with the judge, it is unclear Palmer knew his counsel waived his speedy trial rights. Though the record binds us to conclude Palmer waived those rights, we note that "[t]he trial judge remains ultimately responsible for setting and controlling the docket and ensuring that no speedy trial violations occur." *McCray*, 44 Va. App. at 344 n.2.

and the speedy trial deadline was either waived by Palmer or tolled by the judicial emergency.

Thus, this Court affirms the defendant's convictions.

*Affirmed.*