UNITED STATES of America, Appellee,

v.

Herbert G. POWLESS, Appellant.

No. 76–1639.

United States Court of Appeals, Eighth Circuit.

Submitted Nov. 12, 1976.

Decided Jan. 4, 1977.

Certiorari Denied Feb. 28, 1977.
See 97 S.Ct. 1185.

Dennis P. Coffey, Milwaukee, Wis., for appellant.

Bruce W. Boyd, Asst. U. S. Atty., Sioux Falls, S. D., for appellee; William F. Clayton, U. S. Atty., Sioux Falls, S. D., on brief.

Before VAN OOSTERHOUT, Senior Circuit Judge, HEANEY and HENLEY, Circuit Judges.

VAN OOSTERHOUT, Senior Circuit Judge.

Defendant Herbert G. Powless has taken this appeal from his conviction by a jury upon an indictment charging interstate transportation of a firearm by a convicted felon, in violation of 18 U.S.C. §§ 922(g) and 924(a), and the resulting sentence of two and one-half years imprisonment imposed.

Defendant asserts that he is entitled to a reversal for the following reasons:

I. The search for and the seizure of the firearm was violative of defendant's Fourth Amendment rights. The court erred in refusing to suppress the firearm as evidence.

II. Defendant was twice placed in jeopardy as a consequence of the court's permitting the Government to try the defendant after a mistrial had been declared upon defendant's prior jury trial for the same offense, all in violation of defendant's Fifth Amendment rights.

III. The evidence is not sufficient to support the jury verdict of conviction.

For the reasons hereinafter set out, we reject each of such contentions and affirm the conviction. The relevant facts will be set out in connection with the discussion of the issues to which they relate.

## I. Search and Seizure.

On March 1, 1975, about 1:30 p. m., State Trooper Van Orman received a state police radio broadcast advising that an individual by the name of War Bonnett had purchased a quantity of .357 magnum ammunition in Rapid City, that he had entered a bronze- or copper-colored van with another individual named Joseph War Bonnett for whom there was an outstanding state warrant, that the van was without license plates and was believed to be heading south on Highway 16, and that the van's occupants were considered armed and dangerous. Shortly thereafter a subsequent police broadcast advised that the van might be proceeding south on Highway 79. Van Orman, accompanied by another police officer, proceeded to Highway 79 and there observed a southbound copper-colored van pass him, the van having no license plates. Recognizing the van as the one described in the state broadcast, Van Orman informed the state police radio of his discovery of the vehicle and arranged for a roadblock by other state officers further south on Highway 79 at a place where travel of other cars would be limited. The pursuit was continued.

The van was stopped at the agreed-upon roadblock. The seven Indian occupants of the vehicle were directed to step out of the van and did so. They were interrogated by the officers, starting with the driver, James War Bonnett. They were patted down for weapons. A cartridge belt with ammunition was found on one of the occupants. Joseph War Bonnett produced title papers showing that the van was owned by the American Council on Alcoholism, Milwaukee, Wisconsin. For the purpose of running a National Crime Information Center check on the van, Van Orman proceeded to the van to obtain its serial number, which he found on the back portion of the left door panel about two and one-half feet above the ground. While stooping over to read the serial number, Van Orman observed what appeared to be the butt end of a firearm in the rear of the van. He then, with the keys which had been left in the van, opened the back door and discovered four loaded firearms under a blanket, including the gun involved in this case.

Defendant in his brief concedes "the fact of an open warrant and a vehicle on a South Dakota highway without license plates were facts justifying an investigatory stop." *Terry v. Ohio,* 392 U.S. 1, 27, 88 S.Ct. 1868, 1883, 20 L.Ed.2d 889 (1968), holds:

. . . that there must be a narrowly drawn authority to permit a reasonable search for weapons for the protection of the police officer, where he has reason to believe that he is dealing with an armed and dangerous individual, regardless of whether he has probable cause to arrest the individual for a crime.

Defendant attacks the search and the seizure of the gun here involved as a violation of his constitutional rights upon three grounds: (1) the search for weapons to protect the officers was unnecessary as the occupants of the van had been removed from it and placed under guard; (2) the search was without a warrant and was not an incident to a valid arrest; (3) the vehicle exception to a warrantless search does not come into operation under the facts of this case.

The trial court, after an extensive evidentiary hearing on the motion to suppress, in its unreported memorandum opinion, states:

Law enforcement officers are entitled to act on the strength of a radio bulletin. *United States v. Cage,* 494 F.2d 740 (10th Cir. 1974); *see also Whitely v. Warden,* 401 U.S. 560, 568, 91 S.Ct. 1031, 1037 [, 28 L.Ed.2d 306] (1971). In this case, a pair of radio bulletins advised that a bronze or copper-colored van would be traveling on Highway 79, that it contained one person for whom an arrest warrant had been issued, another who had purchased a quantity of ammunition, and that the van's occupants were considered armed

and dangerous. The van in question matched the description given in the bulletin and was traveling on the highway where the van cited in the bulletin was predicted to be. The van bore no license plates. Under these circumstances, the officers were justified in making an investigatory stop of the van. *See Orricer v. Erickson,* 471 F.2d 1204 (8th Cir. 1973); *United States v. Geelan,* 509 F.2d 737 (8th Cir. 1974). In furtherance of this investigatory stop, it was disclosed that the van was registered to the American Indian Council on Alcoholism. The record in this case does not disclose that anyone present identified himself as being associated with that entity. This fact, coupled with information in the radio bulletin, justified Patrolman Van Orman in obtaining the vehicle's serial number. *United States v. Pearson,* 448 F.2d 1207, 1213 (5th Cir. 1971); *United States v. Powers,* 439 F.2d 373 (4th Cir. 1971); *United States v. Squires,* 456 F.2d 967 (2nd Cir. 1972).

Since, in the judgment of this Court Patrolman Van Orman had a legitimate reason for checking the serial number, his limited intrusion in opening the van door to obtain the number was justified. His discovery of what appeared to be part of a firearm was inadvertent since it occurred while he was looking in the direction of the rear of the van to read the serial number. This discovery, coupled with the information on the radio bulletin, gave Patrolman Van Orman grounds for suspicion of a possible violation of law. Under these circumstances, the butt of the firearm can be said to have been in plain view, and thus its discovery was not the result of a search. *See United States v. Wilson,* [524 F.2d 595 (8th Cir. 1975)].

The "plain view" discovery of the stock of a rifle afforded probable cause to believe that the van contained more weapons, and justified Patrolman Van Orman's actions in unlocking and opening the van's rear door, and moving the blanket which covered the four rifles. *See United States v. Sloven,* 512 F.2d 1059 (8th Cir. 1975); *United States v. Geelan,* 509 F.2d 737 (8th Cir. 1974); *United States v. Omalza,* 484 F.2d 1191 (10th Cir. 1973).

The reasonableness of the police conduct called into question by this motion to suppress is to be assessed in light of all of the circumstances. *United States v. Lawson,* 487 F.2d 468, 477 (8th Cir. 1973). Under the circumstances of this case, this Court concludes that the four firearms in the rear of the van were not found as the result of an unreasonable search and seizure.

We agree with the trial court that the plain view doctrine applies and that the observation of the gun butt, buttressed by the state radio information that the occupants were armed and dangerous, affords a reasonable basis for the search and seizure of the weapons.[1]

While there is no direct testimony that the seizure of the weapons was necessary for the protection of the officers, there is substantial circumstantial evidence that such was the situation. The officers had been reliably informed that the occupants had purchased ammunition and that they were armed and dangerous. The officers selected a place for the roadblock where passing motorists would not be endangered, and vehicles approaching the roadblock were stopped. As the trial court indicated, it was a matter of general knowledge that violence and gun fire were prevalent on the Pine Ridge Reservation. The van was in the vicinity of and headed toward the Pine Ridge Reservation. Moreover, while the passengers had been removed from the van, they were in close proximity to it. No arrest had been made prior to the seizure of the weapons and the probability existed that if no cause for arrest was found, at

---

1. In overruling a defense objection to a question with respect to recent violent activities on the nearby Pine Ridge Indian Reservation, the trial court observed: "I can almost take judicial notice in the past of the firing on the Reservation at this particular time in question. I don't think there is any arguable issue about that whatsoever. There were at least a dozen cases."

least some of the occupants might be permitted to return to the van. Under all the facts and circumstances established by the record, we agree with the trial court that the seizure of the guns was reasonable. *See United States v. Stevens,* 509 F.2d 683, 688 (8th Cir. 1975); *United States v. Wickizer,* 465 F.2d 1154, 1156 (8th Cir. 1972); *United States v. Isham,* 501 F.2d 989, 990–91 (6th Cir. 1974).

Since we have hereinabove held that the seizure of the guns was based on reasonable grounds, we need not and do not reach or determine the issues raised by the defendant that there was no valid arrest, that the seizure was not a proper incident of an arrest, or that the search was improper under the vehicle exception.

## II. Double Jeopardy.

Defendant's double jeopardy claim lacks merit. Defendant had previously been tried for the offense here involved. After approximately twenty-four hours of deliberation, the jury sent the court a note advising that they were unable to reach a unanimous verdict. The court summoned counsel and advised them of the note received from the jury. The following colloquy took place:

MR. COFFEY [Defendant's counsel]: They have had the opportunity to think on their own about it. I don't think the situation would change.

I would oppose the Court instructing in any fashion of trying to break the deadlock at this point because of the length of time.

THE COURT: I haven't suggested that I am going to do that.

MR. COFFEY: I understand that. What I am saying is I would like the Court to declare a hung jury and to declare a mistrial.

The prosecuting attorney made no comment.

■ The trial court has a large discretion in granting a mistrial for inability on the part of a jury to reach a verdict. *Illinois v.*

*Somerville,* 410 U.S. 458, 461, 93 S.Ct. 1066, 35 L.Ed.2d 425 (1973); *United States v. Perez,* 22 U.S. 579, 9 Wheat. 579, 6 L.Ed. 165 (1824); *Parker v. United States,* 507 F.2d 587, 589 (8th Cir. 1974).

■ The issues involved in this case are not complex. The prior trial was a relatively short one. The jury had deliberated approximately twenty-four hours. No abuse of discretion is here shown in granting a mistrial for inability on the part of the jury to reach a verdict. Moreover, defendant's request for such action as set forth in the foregoing colloquy affords an additional basis for upholding the court's exercise of its discretion in favor of a mistrial.

## III. Sufficiency of the Evidence.

■ Defendant stipulated that he had a prior felony conviction. Defendant's attack on the sufficiency of the evidence is based primarily on his contention that the evidence does not establish that he had transported the gun from Milwaukee to South Dakota. The evidence must of course be viewed in the light most favorable to the Government as the prevailing party. The evidence supports a finding that the gun here involved was found in a van in possession of the defendant and was purchased on January 31, 1975, by his wife, who lived at the same Milwaukee address as the defendant. There was no evidence that defendant's wife was a passenger in the van trip to South Dakota. The transportation of the gun from Milwaukee to South Dakota is not disputed. The evidence in our view is adequate to support an inference that defendant transported the gun in interstate commerce.

The judgment of conviction is affirmed.