## Richmond

JOHN DOUGLAS THOMPSON

v.

COMMONWEALTH OF VIRGINIA

No. 2260-91-2

Decided June 8, 1993

Counsel

Steven D. Benjamin, for appellant.

Eugene Murphy, Assistant Attorney General (Mary Sue Terry, Attorney General, on brief), for appellee.

Opinion

**ELDER, J.**—John Douglas Thompson appeals from his convictions for possession of cocaine, possession of a firearm while in possession of cocaine, and possession of a firearm after having been convicted of a felony. He alleges that he was subjected to an illegal search and seizure in violation of the fourth amendment, and thus, the trial court erred in denying his motion to suppress the cocaine found on his person and the handgun found in his car. More specifically, he alleges that the trial court erred in failing to hold (1) that his continued detention was unlawful after one of the officers had determined that the person for whom they had several indictments was not a passenger in his vehicle, thereby removing the justification for their investigatory stop; (2) that the search of the vehicle was unlawful after the officers realized that the sole reason for the detention was a mistake; and (3) that the officers had no objectively reasonable and articulable suspicion that appellant was armed and dangerous. For the reasons set forth below, we reverse appellant's convictions.

I.

On October 12, 1990, Officer Hoyt and two other officers were engaged in surveillance of the residence of Aaron Brockington. They

were aware that Brockington was the head of a drug gang involved with both cocaine and firearms, and they were attempting, for the third time, to arrest him pursuant to several indictments. They also had received information that Brockington would likely be riding slumped down in the passenger seat of a late model vehicle. During their surveillance, they saw a car containing a passenger drive by and pull into Brockington's driveway. Believing the passenger to be Brockington, the officers pulled into the driveway behind the car and Officer Hoyt approached the passenger side. When the passenger exited the vehicle at Hoyt's request, Hoyt discovered that he was not Brockington. Hoyt did not communicate this fact to the other officers, however, but asked the passenger if he had any weapons on him. The passenger said he did not and then consented to Hoyt's request to conduct a patdown search. Hoyt found no concealed weapons.

In the meantime, Officer Russell asked appellant, the driver, to get out and face the car so that he could conduct a patdown search. During the patdown, appellant resisted slightly when Russell approached his left pants pocket and had to be instructed not to interfere with the patdown process. Russell testified that the same pocket contained what felt to him to be drugs. He did not, however, feel anything resembling a weapon and did not remove any items from appellant's pocket. Russell then asked appellant to produce some identification. Appellant's hands and arms were shaking as he complied with the officer's requests, and he continued to look back toward the car. A third officer, Kenneth Foster, arrived and searched the car for weapons. Foster admitted that he knew before conducting the search that Brockington was not in the car and that he could see nothing unusual through the windows or open doors. He also testified that he saw nothing under the seats. In spite of this fact, however, Foster continued the search by picking up a windbreaker from the back seat, which was about a foot away from appellant, and discovered it to be heavy. Concluding that the jacket must contain a weapon, he searched it and found a .38 caliber handgun in the pocket. After appellant admitted that he was a convicted felon, the officers arrested him for possession of a firearm after having been convicted of a felony. In the search incident to appellant's arrest, the officers found a dollar bill with cocaine residue in his pocket and twelve plastic baggie corners in his left pants leg.

Appellant moved to suppress the admission of the firearm and drug paraphernalia, but that motion was denied.

## II.

On appeal, the burden is on appellant to show, considering the evidence in the light most favorable to the Commonwealth, that the denial of the motion to suppress constituted reversible error. *See Fore v. Commonwealth*, 220 Va. 1007, 1010, 265 S.E.2d 729, 731, *cert. denied*, 449 U.S. 1017 (1980). In assessing the propriety of the trial court's ruling, we keep in mind that the fourth amendment does not proscribe all searches and seizures, only those that are "unreasonable." *Terry v. Ohio*, 392 U.S. 1, 9 (1968). Whether a search or seizure is unreasonable is determined by balancing the individual's right to be free from arbitrary government intrusions against society's countervailing interest in preventing or detecting crime and in protecting its law enforcement officers. *United States v. Brignoni-Ponce*, 422 U.S. 873, 878 (1975). In striking this balance in *Terry v. Ohio*, the Supreme Court concluded that an officer may conduct a patdown search of a suspect's outer clothing if he can " 'point to specific and articulable facts which, taken together with rational inferences from those facts,' " reasonably lead him to conclude, "in light of his experience, that 'criminal activity may be afoot' and that the suspect 'may be armed and presently dangerous.' " *Lansdown v. Commonwealth*, 226 Va. 204, 209, 308 S.E.2d 106, 110 (1983) (quoting *Terry*, 392 U.S. at 21, 30), *cert. denied*, 465 U.S. 1104 (1984).

Upon the lawful stop of an automobile, we have recognized that the balancing of these interests may permit the police to require both the driver and any passengers to step out of the vehicle. *Hatcher v. Commonwealth*, 14 Va. App. 487, 491-92, 419 S.E.2d 256, 258-59 (1992). Again, "if the police officer possesses a reasonable belief based on 'specific and articulable facts which . . . reasonably warrant' the officer in believing that the suspect is dangerous and . . . may gain immediate control of weapons," the officer may search those portions of the passenger compartment of the car in which a weapon might be hidden. *Michigan v. Long*, 463 U.S. 1032, 1049 (1983) (citing *Terry*, 392 U.S. at 21).

Appellant concedes that, because the officers thought that Brockington was a passenger, they had the reasonable suspicion necessary to stop appellant's car and ask both him and his passenger to get out. The same reasonable suspicion that justified the stop also provided justification for the patdown search of the driver incident thereto. Although Officer Hoyt knew that the passenger was not Brockington, he conducted a consensual patdown search. However,

because Officer Russell did not know that Brockington was not in the car, the same reasonable suspicion justifying the stop also justified his nonconsensual patdown of appellant, the driver. Brockington, who was being sought on drug charges, was known to carry firearms; the police had received a tip that he likely would be slumped down in the passenger seat of a large car; and they observed appellant, who was driving a large car in which someone resembling Brockington was hunched down in the passenger seat, turn his car into the driveway of what they believed to be Brockington's residence. These specific and articulable facts provided Officer Russell with the reasonable suspicion that appellant, too, might be armed and dangerous, thereby justifying the patdown search.

The evidence also shows, however, that Officer Foster was aware, before he searched the car, that the passenger was not Brockington. The Commonwealth argues that the search was nevertheless valid in order to ensure the officers' safety and was supported by reasonable and articulable suspicion, based on the presence of the vehicle in Brockington's driveway and appellant's nervousness during the stop. It relies on *Michigan v. Long*, 463 U.S. 1032; *United States v. Powless*, 546 F.2d 792 (8th Cir.), *cert. denied*, 430 U.S. 910 (1977), *cited with approval in Long*, 463 U.S. at 1052; and *Glover v. Commonwealth*, 3 Va. App. 152, 348 S.E.2d 434 (1986), *aff'd*, 236 Va. 1, 372 S.E.2d 134 (1988), to support its argument. We conclude, however, that the facts in those cases are clearly distinguishable from those here because in all of those cases, the officers developed additional concrete facts that led them to fear for their safety.

In *Long*, the officers observed a vehicle speeding and swerving off the road into a ditch and decided to investigate. 463 U.S. at 1035. Long exited his vehicle voluntarily, left the door open and began to walk toward the officers. He appeared to be under the influence of something and was very slow to respond to the officers' requests for his license and registration. Following their second request, Long turned away from the officers and walked back toward the vehicle. Following him, the officers observed a large hunting knife on the floorboard of the driver's side of the car. Concerned for their safety, they conducted a patdown search of Long, which revealed no weapons, and then shined a flashlight into the car without actually entering it. Seeing something protruding from under the front armrest, one of the officers discovered an open pouch containing marijuana. *Id.* at 1035-36. In *Long*, the officers did not pat the suspect down until they

had already observed a knife on the floorboard of his car, and they did not actually enter the interior of the car until after spotting another unidentifiable object protruding from under the armrest. In upholding the constitutionality of the search in *Long*, the Court "stress[ed] that [its] decision does not mean that the police may conduct automobile searches *whenever* they conduct an investigative stop." *Id.* at 1049 n.14. It held that "officers who conduct area searches during investigative detentions must do so only when they have the level of suspicion identified in *Terry*" and that "[t]he circumstances of this case clearly justified [the officers] in their reasonable belief that Long posed a danger if he were permitted to reenter his vehicle." *Id.* at 1050.

In *Powless*, the officers had information that the occupants of the van were armed and dangerous, and a frisk of one of them revealed a cartridge belt. 546 F.2d at 794. In attempting to locate the vehicle serial number so that he could confirm whether the van was stolen, one of the officers observed the butt of a firearm in the rear of the van. Using the keys that had been left in the van, the officer discovered four loaded firearms under a blanket. *Id.* In *Powless*, as in *Long*, the searching officers obtained additional facts following the stop that reinforced their belief that the suspects' vehicle contained weapons, thereby justifying the searches.

Finally, in *Glover*, the security guard, an off-duty police officer, observed Glover casing a store as if preparing for a robbery. 3 Va. App. at 154, 348 S.E.2d at 436. Glover sat outside in his car for about fifteen minutes. Upon entering the store, Glover focused his attention on the cash register and the store's customers. The guard got out a map because Glover said he was trying to locate a friend who lived in the area, but Glover "seemed more interested in the cash register than where he wanted to go." *Id.* Glover, who appeared nervous, also said that a couple in the store had followed him inside. The guard thought this suspicious, however, because he had observed the couple in the store before Glover entered. Glover then returned to his car, where he sat for fifteen minutes before reentering the store. When the guard approached him again, he again became nervous and began to sweat. He then bought a soft drink and returned to his car. Still concerned, the guard called in the license plate and discovered that the car was registered to a woman. *Id.* After requesting backup, he approached Glover's car to question him and observed him with his hand inside a

blue gym bag sitting beside him on the passenger seat. Glover acknowledged that the car was not his, but he telephoned the owner to confirm for the guard that he had permission to drive it. When a second officer arrived, the guard searched the car and found a loaded gun in Glover's gym bag. *Id.* at 155, 348 S.E.2d at 437.

In all of the above cases, the courts found the searches justified. In each case, however, the officers possessed sufficient facts from which to form a reasonable and articulable suspicion that the suspects were engaged in criminal activity and might be in possession of weapons. In both *Long* and *Powless*, the police had probable cause to stop the suspects and then gained additional information giving them reason to conduct full vehicle searches — in *Long*, based on the suspect's possession of a hunting knife in plain view in his car, and in *Powless*, based on a suspect's possession of a cartridge belt on his person and a gun in plain view in his van. In *Glover*, the suspect's extended course of conduct in casing a store, within full view of an experienced police officer, gave that officer the reasonable and articulable suspicion necessary to search Glover's vehicle.

In this case, by contrast, the officers' justification for the detention evaporated when they discovered that Brockington was not in the vehicle. Although conceding this point, the Commonwealth attempts to justify the search based on safety concerns with information known *prior* to the stop but without providing a sufficient nexus between appellant and that information. Other than the fact that appellant turned into Aaron Brockington's driveway, the officers had no reason to suspect a link between the two. In addition, appellant and his passenger complied with the officer's requests, and the patdown and visual searches of them and their vehicle revealed no additional information from which the police could reasonably have concluded that appellant might be armed. Officer Russell testified that he thought appellant might have drugs in his pocket, but he was unable to confirm this prior to the search. Although the Commonwealth asserts appellant's extreme nervousness as justification for searching the car, we are unwilling to hold that nervousness, without more, provides the reasonable suspicion necessary to conclude that a person might be armed and might pose a threat to the officers in their attempt safely to terminate the detention. Such an approach would come dangerously close to violating the principle set forth in *Long* "that police may [not] conduct [indiscriminate] automobile searches whenever they conduct an investigative stop." 463 U.S. at 1049 n.14 (emphasis omitted); *see also*

*Williams v. Commonwealth*, 4 Va. App. 53, 67, 354 S.E.2d 79, 86-87 (1987) (quoting *United States v. Bull*, 565 F.2d 869, 870-71 (4th Cir. 1977), *cert. denied*, 435 U.S. 946 (1978)) (recognizing nervousness *as one of several factors* which, in conjunction, may contribute to the development of reasonable suspicion); *Glover*, 3 Va. App. at 157, 348 S.E.2d at 436, 438 (taking into consideration, *as one of many factors*, that Glover "was sweating heavily" and "appeared nervous and pre-occupied with the operation of the cash register").

We hold that, without a stronger link between appellant and Aaron Brockington and in the absence of any other facts providing the officers with reasonable suspicion that their safety might have been in jeopardy while terminating the detention, the search of appellant's car was improper and, therefore, the search of appellant incident to his arrest also was improper. Because the gun and cocaine were improperly admitted into evidence, we reverse and remand for further proceedings if the Commonwealth be so advised.

*Reversed and remanded.*

Cole, J.,* concurred.

Benton, J., concurring.

I concur in reversing the conviction. I do not join in the opinion, however, because of its reliance upon *Hatcher v. Commonwealth*, 14 Va. App. 487, 419 S.E.2d 256 (1992) (extending *Pennsylvania v. Mimms*, 434 U.S. 106 (1977), to hold that passengers in automobiles stopped for routine traffic infractions are subject to the same constraints as the drivers). Recently in *Bethea v. Commonwealth*, 245 Va. 416, 429 S.E.2d 211 (1993), our Supreme Court declined the opportunity to extend *Mimms*, stating "we need not determine whether the *de minimis* rationale utilized in *Mimms* is applicable to a passenger in a vehicle when the initial vehicle stop is predicated solely on matters pertaining to the driver." *Id.* at 419, 429 S.E.2d at 213.

Neither of the parties relied upon *Hatcher* in their briefs to this Court. I see no need to inject it into the decision of this case.

---

* Retired Judge Marvin F. Cole took part in the consideration in this case by designation pursuant to Code 17-116.01.