COURT OF APPEALS OF VIRGINIA


Present:  Chief Judge Fitzpatrick, Judges Baker, Benton, Coleman,
          Willis, Elder, Bray, Annunziata, Overton and Bumgardner
Argued at Richmond, Virginia


GORDON WAYNE WELSHMAN, S/K/A
 GORDON WAYNE WELSHMAN, JR.
                                          OPINION BY
v.        Record No. 0818-96-3       JUDGE JOSEPH E. BAKER
                                          JULY 21, 1998
COMMONWEALTH OF VIRGINIA


                 UPON A REHEARING EN BANC

       FROM THE CIRCUIT COURT OF THE CITY OF LYNCHBURG
                   Richard S. Miller, Judge

       Clinton R. Shaw, Jr. (Office of the Public
       Defender, on brief), for appellant.

       Eugene Murphy, Assistant Attorney General
       (Richard Cullen, Attorney General, on brief),
       for appellee.



     Gordon Wayne Welshman (appellant) was convicted in a bench

trial in the Circuit Court for the City of Lynchburg (trial

court) for possession of cocaine with intent to distribute.  On

appeal, he contended the trial court erroneously denied his

motion to suppress the cocaine and held the evidence sufficient

to prove he intended to distribute the cocaine.  A divided panel

of this Court reversed and dismissed the conviction, holding the

cocaine upon which his conviction was based was discovered as the

result of an unreasonable seizure of his person, in violation of

the Fourth Amendment.  See Welshman v. Commonwealth, 25 Va. App.

599, 491 S.E.2d 294 (1997).  Upon rehearing en banc, we hold the

trial court properly denied appellant's motion to suppress and

the evidence is sufficient to prove appellant intended to distribute the cocaine. Accordingly, we affirm his conviction.

During June 1995, Investigator Thomas of the Lynchburg Police Department conducted ongoing surveillance in the 2100 block of Main Street, which was known as an open-air drug market. Between January 1994 and August 11, 1995, the police "had [703] calls in the [2100] block of Main Street," 136 of which were for drug offenses. Sixty-eight of the drug offense calls directly involved the residence at 2110 Main Street, which was a reputed crack house. Police also received seventeen "shots fired" calls for that block during the same period.

On June 29, 1995, Investigator Thomas used binoculars to observe two individuals engaging in hand-to-hand transactions with drivers and pedestrians in the 2100 block of Main Street. He saw those two individuals carry white chunks of what appeared to be crack cocaine in their hands and exchange the chunks for cash. He believed the two were selling cocaine. Appellant, along with about seven other people, had been standing in front of the residence at 2110 Main Street for at least fifteen minutes, but appellant was not visibly involved in any of the apparent drug transactions.

Investigator Thomas radioed his observations to a team of four officers, including Officer Duff, who approached the scene to apprehend the two individuals suspected of selling cocaine. It was about 8:25 p.m. and "was just barely light outside." When

Investigator Thomas radioed the team, the two target individuals were "in the middle of the street . . . making a transaction" with a "stopped . . . vehicle."  However, "when the officers began approaching in their vehicle[,] both individuals ran back into [the] little group where [appellant] was."  This group was on the sidewalk area in front of 2110 Main Street, between the front porch and a van with its doors open parked in front of the residence.  Four or five people, "male and female and some children," were on the front porch of the residence, and about three people were inside the van.  In addition, "[t]here were other pedestrians within the block."  Investigator Thomas testified that the officers "always want to outnumber the individuals we're getting out with, but in some cases we can't do it."  The officers "elected to go in with what they had," but upon arriving at the scene, Officer Duff called for additional officers.

"Due to the nature and reputation of the area and [Officer Duff's] experience with the area, and, also some of the people that [he] had observed there," he decided to direct everyone on the sidewalk at the scene to lie "in a prone position momentarily" for the safety of the officers and the civilians.  Duff also wanted to apprehend the target subjects before they had a chance to dispose of any cocaine they may have possessed.  The officers intended to secure the two target individuals and the scene "either by having people leave or making sure that . . .

the people [who] decided to stay" had no weapons.  Duff previously had seen a pellet gun in the mailbox of the residence, which was located only three to four feet from where appellant was standing, and in the possession of one of the occupants of the residence.  He also was aware of several prior "shots fired" calls involving that residence and knew police previously had seen an individual firing a weapon in front of that residence.  The 2100 block "was known as a high crime, very volatile area."

As the officers were exiting the car, Officer Duff told everyone on the sidewalk, including appellant, to get on the ground and extend their arms out from their bodies.  He said he would have allowed anyone other than the target individuals to leave the scene, but he did not inform them of this option.  Everyone complied with Officer Duff's directive.  While other officers secured the target subjects, Officer Duff noticed appellant had not extended his arms as directed and instead had kept them under his torso.  Fearing appellant was reaching for a weapon, Duff "immediately went to [appellant]" and again told him to extend his arms.  As Duff began to roll appellant over, appellant complied by extending his arms.  Duff saw nothing in the area where appellant had been lying but was concerned about the officers' safety and frisked appellant for weapons.  When he patted the exterior of appellant's left front pants pocket, he detected an object that "felt like several smaller objects that were hard and it felt like . . . they were wrapped in some type

- 4 -

of baggy-type wrap." Without manipulating the contents of appellant's pocket, Duff immediately concluded the objects were crack cocaine. He then pulled from appellant's pocket a piece of a brown paper bag containing five or six chunks of crack cocaine weighing 1.44 grams. Other than appellant and the target individuals, police did not frisk anyone else at the scene.

In a search of appellant incident to arrest, the officers found $150 in cash, comprised of five $20 bills and one $50 bill. They found no devices for ingesting cocaine in appellant's possession. After Mirandizing appellant, Officer Duff asked him if he smoked crack cocaine. Appellant said, "Do I look like I smoke cocaine?" When Duff replied, "No," appellant said, "All right then." Appellant said he was not holding the cocaine for anyone else and denied having an intent to sell it.

At trial, Officer Duff qualified as an expert and testified appellant's possession of 1.44 grams of crack cocaine was inconsistent with possession for personal use. He testified that crack cocaine was commonly sold in the Lynchburg area in $20 and $40 rocks and that one gram of cocaine would cost $150 to $175. Investigator Thomas testified that, in his experience, people selling cocaine commonly carry several rocks in pieces of brown paper or small pieces of cellophane, plastic wrappers or plastic bags. Purchasers, by contrast, he testified, "usually just get the rock and leave."

Appellant moved to suppress, contending the seizure of his

person and the subsequent pat-down search and removal of the cocaine from his pocket violated the United States and Virginia Constitutions.  The trial court denied the motion to suppress, finding "the police officers in the case acted properly and had reasonable probability or reasonable basis to believe that the area involved was very dangerous; that it was a high crime area."  As a result, he held the officers' "actions were reasonable."

At trial, appellant moved to strike the Commonwealth's evidence, but the trial court denied the motion and convicted appellant of possessing cocaine with intent to distribute.  The trial court "[drew] the inference based on [appellant's] answers [to] what the police officer asked him" that "[appellant] was not a [cocaine] user."

## Motion to Suppress

In reviewing a trial court's denial of a motion to suppress, "the burden is upon [appellant] to show that this ruling, when the evidence is considered most favorably to the Commonwealth, constituted reversible error."  Fore v. Commonwealth, 220 Va. 1007, 1010, 265 S.E.2d 729, 731 (1980).  Determining whether police may make a warrantless search or seizure involves issues of both law and fact and is reviewed de novo on appeal.  See Ornelas v. United States, 517 U.S. 690, 696-97 (1996) (articulating standard for reviewing determinations of reasonable suspicion and probable cause).  However, "[i]n performing such analysis, we are bound by the trial court's findings of

- 6 -

historical fact unless 'plainly wrong' or without evidence to support them[,] and we give due weight to the inferences drawn from those facts by resident judges and local law enforcement officers."  McGee v. Commonwealth, 25 Va. App. 193, 198, 487 S.E.2d 259, 261 (1997) (en banc) (citing Ornelas, 517 U.S. at 699).

Detention

The Commonwealth concedes appellant was seized within the meaning of the Fourth Amendment when Officer Duff ordered him to lie face down on the ground and extend his arms.  The Commonwealth also concedes the officers had no reason to believe appellant had been engaged in criminal activity.  The question on appeal, therefore, is whether the officers' detention of appellant nevertheless was constitutionally justified.  We hold that it was.

"The [F]ourth [A]mendment does not proscribe all seizures, only those that are 'unreasonable.'  Whether a seizure is unreasonable is determined by balancing the individual's right to be free from arbitrary government intrusions against society's countervailing interest in preventing or detecting crime and in protecting its law enforcement officers."  Bethea v. Commonwealth, 14 Va. App. 474, 476, 419 S.E.2d 249, 250 (1992) (en banc), aff'd on other grounds, 245 Va. 416, 429 S.E.2d 211 (1993); see U.S. Const. amend. IV; Va. Const. art. I, § 10.  The validity of a seizure "'turns on an objective assessment of the

- 7 -

officer's actions in light of the facts and circumstances confronting him at the time,' and not on the officer's actual state of mind at the time the challenged action was taken." Maryland v. Macon, 472 U.S. 463, 470-71 (1985) (quoting Scott v. United States, 436 U.S. 128, 136 (1978)).

Ordinarily, in the absence of consent, even a brief detention must be based on at least a reasonable, articulable suspicion the person seized is engaged in criminal activity. See, e.g., McGee, 25 Va. App. at 198-99, 487 S.E.2d at 261-62. However, as the United States Supreme Court has held, the absence of probable cause or reasonable suspicion of criminal activity does not necessarily render a detention unlawful. See Maryland v. Wilson, 117 S. Ct. 882, 886 (1997); Michigan v. Summers, 452 U.S. 692, 705 (1981); see also United States v. Martinez-Fuerte, 428 U.S. 543, 556-62 (1976) (upholding border patrol stops of vehicles at fixed checkpoint in absence of reasonable suspicion that vehicle contained illegal aliens).

In Michigan v. Summers, 452 U.S. 692, for example, the Court held that "a warrant to search for contraband founded on probable cause implicitly carries with it the limited authority to detain the occupants of the premises while a proper search is conducted." Id. at 705 (footnote omitted). Among various "legitimate law enforcement interest[s]" in detaining the occupants, it emphasized the

> importance . . . [of] minimizing the risk of
> harm to the officers. . . . [T]he execution
> of a warrant to search for narcotics is the

> kind of transaction that may give rise to
> sudden violence or frantic efforts to conceal
> or destroy evidence.  The risk of harm to
> both the police and the occupants is
> minimized if the officers routinely exercise
> unquestioned command of the situation.

Id. at 702-03 (footnote omitted).  Although the Court stressed

the importance of the existence of the search warrant to justify

the detention in that case, see id. at 701, it also noted its

holding did not "preclude the possibility that comparable police

conduct may be justified by exigent circumstances in the absence

of a warrant."  Id. at 702 n.17.

In the more recent case of Wilson, 117 S. Ct. at 886, the

Court extended Pennsylvania v. Mimms, 434 U.S. 106 (1977), to

hold that a police officer making a routine traffic stop may

order a passenger out of the car for safety reasons, even if the

officer has no reason to suspect the passenger of criminal

behavior.  See also Bethea, 14 Va. App. 474, 419 S.E.2d 249.  The

Court noted the "reasonableness [of an officer's actions]

'depends "on a balance between the public interest and the

individual's right to personal security free from arbitrary

interference by law officers."'"  Wilson, 117 S. Ct. at 885

(quoting Mimms, 434 U.S. at 109 (quoting United States v.

Brignoni-Ponce, 422 U.S. 873, 878 (1975))).  "On the public

interest side of the balance," the Court identified a "weighty

interest in officer safety," advanced by depriving the occupants

of access to any weapons which might be concealed in the

passenger compartment.  See id. at 885-86.  It concluded that

> danger to an officer from a traffic stop is
> likely to be greater when there are
> passengers in addition to the driver in the
> stopped car.  While there is not the same
> basis for ordering the passengers out of the
> car as there is for ordering the driver out,
> the additional intrusion on the passenger is
> minimal.

Id. at 886.

Under the reasoning of Summers and Wilson, we hold the officers here were justified in ordering appellant to lie on the ground briefly, both for his safety and the safety of the officers and other bystanders.  The officers lacked reasonable suspicion or probable cause to believe appellant was engaged in criminal activity and did not have an arrest warrant for the two target individuals.  However, they had probable cause to believe the two target individuals were then engaged in selling cocaine in plain view directly in front of a reputed crack house, about which officers had received numerous "shots fired" complaints.  When the four officers first began to approach the scene, the two target individuals were standing by a car in the middle of the street.  By the time the officers arrived, the two men had retreated to the sidewalk into the group of about eight people, of which appellant had been a part for at least fifteen minutes.  Once the target subjects had retreated into the group, that group outnumbered the police officers by a ratio of two to one. Other people, including children, were in close proximity.

Although the officers had not seen any weapons on the people

at the scene, given the number of people in close proximity, the reputation of the house and block for violence, see Brown v. Commonwealth, 15 Va. App. 232, 234 n.1, 421 S.E.2d 911, 912 n.1 (1992) (recognizing that "presence in a high crime area" is a factor which may be considered in determining whether an investigatory stop is appropriate), and the nature of the crime for which they sought to apprehend the target subjects, see, e.g., Logan v. Commonwealth, 19 Va. App. 437, 445, 452 S.E.2d 364, 369 (1994) (en banc) (noting that relationship between distribution of controlled substances and possession and use of dangerous weapons "is now well recognized"), the evidence supports the trial court's conclusion that the officers reasonably feared for their safety and the safety of the bystanders and properly ordered those people on the sidewalk with the target subjects to lie on the ground.

We conclude the trial court did not err in denying the motion to suppress. Requiring the officers to notify the members of the group on the sidewalk that they were free to leave before or while the officers apprehended the target subjects could have posed an increased risk to the safety of the officers, the members of the group on the sidewalk, and the other bystanders if the target subjects had attempted to dispose of evidence, resist arrest, or flee the scene. Therefore, the officers' order to the bystanders on the sidewalk to lie on the ground "momentarily" while the target subjects were taken into custody was not

unreasonable.  See Baker v. Monroe Township, 50 F.3d 1186, 1191-92 (3d Cir. 1995) (in federal civil rights action, holding that police executing no-knock search warrant for drugs could detain mother and her three children, who were climbing steps to target apartment, to protect both the officers and those detained); Willowby v. City of Philadelphia, 946 F. Supp. 369, 373-74 (E.D. Pa. 1996) (in federal civil rights action, holding that police executing search warrant for drugs did not violate constitutional rights of those present on porch of adjacent row house by ordering them to "get down . . . in the interest of the bystanders' and officers' safety") (footnote omitted).

Moreover, the officers briefly detained only those people in immediate proximity to the target subjects and not those on the nearby porch or in the van.  In addition, Officer Duff testified he intended to allow people to leave the scene immediately after the target subjects had been secured and he would have frisked only those who chose to stay at the scene.

Viewing the facts in the light most favorable to the Commonwealth, we cannot say the brief detention of appellant violated his rights under the United States or Virginia Constitutions.

Frisk for Weapons

Appellant also contends Officer Duff violated his Fourth Amendment rights when Duff frisked him for weapons.  Again, we disagree.

Under settled principles, once an officer has lawfully detained an individual, "he is 'authorized to take such steps as [are] reasonably necessary to protect [his and others'] personal safety and to maintain the status quo during the course of the stop.'" Servis v. Commonwealth, 6 Va. App. 507, 519, 371 S.E.2d 156, 162 (1988) (quoting United States v. Hensley, 469 U.S. 221, 235 (1985)). An officer may preserve the status quo by ordering the person detained to place his hands where the officer can see them. See Woodson v. Commonwealth, 14 Va. App. 787, 793-94, 421 S.E.2d 1, 5 (1992), aff'd, 245 Va. 401, 429 S.E.2d 27 (1993); Bethea, 14 Va. App. at 478, 419 S.E.2d at 252.

Additional information may provide the basis for a frisk of the person for weapons. An officer "may conduct a limited pat-down search of the suspect's outer clothing to search for weapons if the officer reasonably believes, based on specific and articulable facts, that the suspect might be armed and dangerous." Phillips v. Commonwealth, 17 Va. App. 27, 30, 434 S.E.2d 918, 920 (1993). The refusal of a person detained to show his hands may provide just such a basis. See James v. Commonwealth, 22 Va. App. 740, 745-46, 473 S.E.2d 90, 92 (1996) (permitting frisk of passenger who appeared jittery and did not respond to officer's order to keep hands in view). Additional factors appropriate for consideration may include the reputation of the neighborhood as a high-crime area. See Brown, 15 Va. App. at 234 n.1, 421 S.E.2d at 912 n.1.

- 13 -

Officer Duff initially detained appellant for safety reasons and did not have reasonable suspicion of criminal activity by appellant. However, Officer Duff was lawfully there investigating criminal activity that Investigator Thomas had observed. Once appellant had been detained, Duff was entitled to take reasonable steps to protect the safety of the officers, the target individuals, and everyone else at or near the scene. In determining what measures were appropriate, Duff was entitled to consider the reputation of the immediate area for violence and drug-related crime. See id. Duff attempted to maintain safety in a minimally intrusive manner by ordering appellant and the others on the sidewalk to lie prone and extend their arms from their bodies so their hands would be in plain view. When appellant refused Officer Duff's order to extend his hands from his body, placing them under his torso instead, Duff had specific and articulable facts giving rise to the reasonable belief appellant "might be armed and dangerous." See id.; see also United States v. Moorefield, 111 F.3d 10, 13-14 (3d Cir. 1997) (upholding pat-down of passenger following his failure to obey officer's order to place hands in view); Lansdown v. Commonwealth, 226 Va. 204, 212-13, 308 S.E.2d 106, 111-12 (1983), cert. denied, 465 U.S. 1104 (1984) (permitting frisk of van's passenger for weapons where driver was stopped for multiple traffic infractions including reckless driving and attempting to elude a police officer and where passenger "individually did

- 14 -

nothing to indicate he possessed a concealed weapon").

Appellant's subsequent compliance with Duff's order and Duff's failure to find a weapon on the ground beneath appellant did not remove the possibility appellant had a weapon on his person and might again try to access it.

Under these facts, we conclude the frisk for weapons was not an unreasonable search.

### "Plain Feel" Doctrine

When Officer Duff felt the rocks of crack cocaine in appellant's pocket, the plain feel doctrine of Minnesota v. Dickerson, 508 U.S. 366 (1993), permitted their seizure. Under that doctrine,

> [i]f a police officer lawfully pats down a suspect's outer clothing and feels an object whose contour or mass makes its identity immediately apparent, there has been no invasion of the suspect's privacy beyond that already authorized by the officer's search for weapons; if the object is contraband, its warrantless seizure would be justified by the same practical considerations that inhere in the plain view context.

Id. at 375-76.

Here, Officer Duff testified he identified the item when he first felt it and did not have to manipulate it in order to complete the identification. Therefore, viewed in the light most favorable to the Commonwealth, the evidence supported the trial court's denial of appellant's motion to suppress on this issue. See also Ruffin v. Commonwealth, 13 Va. App. 206, 208-09, 409 S.E.2d 177, 178-79 (1991) (applying plain view doctrine to uphold

- 15 -

seizure where officer conducting pat-down for weapons found item he thought to be controlled substance).

### Intent to Distribute

Appellant also challenges the sufficiency of the evidence to prove intent to distribute.  In evaluating such a challenge, we view the record in the light most favorable to the Commonwealth, granting to it all reasonable inferences fairly deducible therefrom.  See Martin v. Commonwealth, 4 Va. App. 438, 443, 358 S.E.2d 415, 418 (1987).  The credibility of a witness, the weight accorded the testimony, and the inferences to be drawn from proven facts are matters to be determined by the fact finder.  See Long v. Commonwealth, 8 Va. App. 194, 199, 379 S.E.2d 473, 476 (1989).

Circumstantial evidence may establish the elements of a crime, provided it excludes every reasonable hypothesis of innocence.  See, e.g., Tucker v. Commonwealth, 18 Va. App. 141, 143, 442 S.E.2d 419, 420 (1994).  However, "the Commonwealth need only exclude reasonable hypotheses of innocence that flow from the evidence, not those that spring from the imagination of the defendant."  Hamilton v. Commonwealth, 16 Va. App. 751, 755, 433 S.E.2d 27, 29 (1993).  Whether a hypothesis of innocence is reasonable is a question of fact, see Cantrell v. Commonwealth, 7 Va. App. 269, 290, 373 S.E.2d 328, 339 (1988), and a finding by the trial court is binding on appeal unless plainly wrong.  See Martin, 4 Va. App. at 443, 358 S.E.2d at 418.

"Because direct proof of intent [to distribute drugs] is often impossible, it must be shown by circumstantial evidence." Servis v. Commonwealth, 6 Va. App. 507, 524, 371 S.E.2d 156, 165 (1988). Such evidence may include the quantity of drugs and cash possessed and whether appellant used drugs. See Poindexter v. Commonwealth, 16 Va. App. 730, 734-35, 432 S.E.2d 527, 530 (1993). Possession of a large sum of money, especially in small denominations, and the absence of any paraphernalia suggestive of personal use, also are regularly recognized as factors indicating an intent to distribute. See Colbert v. Commonwealth, 219 Va. 1, 4, 244 S.E.2d 748, 748-49 (1978).

Here, appellant possessed 1.44 grams of crack cocaine rocks and $150 in cash, comprised of five $20 bills and one $50 bill. Officer Duff, who was accepted by the court as an expert, testified the quantity of cocaine found was inconsistent with personal use and consistent with distribution. He testified appellant's possession of the $20 bills also was consistent with distribution of crack cocaine, which usually was sold in $20 and $40 increments. Finally, police found no evidence of personal use of cocaine, and appellant denied holding it for someone else. These facts, combined with appellant's indignant response to police when they asked if he smoked crack cocaine, permitted the inference that he possessed the cocaine with the requisite intent to distribute. The trial court, as the trier of fact, drew just such an inference, and we cannot say it erred in doing so.

Officer Duff admitted an addict could consume one gram of cocaine in a day, and Investigator Thomas admitted appellant could have purchased the drugs as they were packaged.  However, no evidence in the record showed appellant personally used cocaine, and appellant's statement to Officer Duff negated such an inference.  Therefore, the trial court was entitled to conclude that the only reasonable hypothesis flowing from the evidence was that appellant intended to distribute the cocaine.

For these reasons, we hold the trial court did not err in denying appellant's motion to suppress and in finding the

evidence sufficient to prove he intended to distribute the cocaine.  Therefore, we affirm appellant's conviction.

<u>Affirmed.</u>

Annunziata, J., with whom Benton and Elder, JJ., join, dissenting.

The majority holds that police officers may seize a person whom they have no reasonable, articulable basis to suspect of criminal activity. Because I believe this holding is not supported by Fourth Amendment law, I respectfully dissent.

Investigator Thomas observed two men conduct drug transactions, then join a group of eight men, including appellant, standing on a sidewalk in front of a reputed crack house. Thomas did not see appellant do anything "except stand there." At Thomas' direction, Officer Duff moved into the area to apprehend the men involved in the drug transactions. Duff wanted to "secure the two target suspects and then make the scene secure, either by having people leave or making sure that there were no weapons with the people that decided to stay." As he approached the scene, Duff ordered the individuals on the sidewalk, including appellant, to lie on the ground in a prone position and extend their arms. After appellant assumed a prone position, but kept his hands under his torso, Duff conducted a pat-down search and discovered the cocaine used to support appellant's conviction.

"[P]eople are not shorn of all Fourth Amendment protection when they step from their homes onto the public sidewalks." Delaware v. Prouse, 440 U.S. 648, 663 (1979). In holding that no reasonable suspicion or probable cause was required to seize appellant, the majority applies the principle that, "[w]hether a

- 20 -

seizure is unreasonable is determined by balancing the individual's right to be free from arbitrary government intrusions against society's countervailing interest in preventing or detecting crime and in protecting its law enforcement officers."  Bethea v. Commonwealth, 14 Va. App. 474, 476, 419 S.E.2d 249, 250 (1992) (en banc) (citing United States v. Brignoni-Ponce, 422 U.S. 873, 878 (1975)), aff'd on other grounds, 245 Va. 416, 429 S.E.2d 211 (1993).

"For all but . . . narrowly defined intrusions, the requisite 'balancing' has been performed in centuries of precedent and is embodied in the principle that seizures are 'reasonable' only if supported by probable cause."  Dunaway v. New York, 442 U.S. 200, 214 (1979).  The reasonableness of seizures less intrusive than a traditional arrest, however,

> involves a weighing of the gravity of the
> public concerns served by the seizure, the
> degree to which the seizure advances the
> public interest, and the severity of the
> interference with individual liberty.  A
> central concern in balancing these competing
> considerations in a variety of settings has
> been to assure that an individual's
> reasonable expectation of privacy is not
> subject to arbitrary invasions solely at the
> unfettered discretion of officers in the
> field.  To this end, the Fourth Amendment
> requires that a seizure must be based on
> specific, objective facts indicating that
> society's legitimate interests require the
> seizure of the particular individual, or that
> the seizure must be carried out pursuant to a
> plan embodying explicit, neutral limitations
> on the conduct of individual officers.

Brown v. Texas, 443 U.S. 47, 50-51 (1979) (citations omitted);

see also <u>Prouse</u>, 440 U.S. at 654 (explaining that the balancing test requires either individualized suspicion or other safeguards to limit discretion); <u>Lowe v. Commonwealth</u>, 230 Va. 346, 350, 337 S.E.2d 273, 276 (1985) (citing <u>Brown</u>, 443 U.S. at 50–51) (explaining <u>Brown</u> standard).

Applying this standard, the Supreme Court of the United States and Virginia courts have repeatedly held that a constitutionally valid seizure less intrusive than an arrest requires either (1) reasonable, articulable suspicion that a crime is being or has been committed, <u>see, e.g.</u>, <u>United States v. Sokolow</u>, 490 U.S. 1, 7 (1989) (explaining that an investigatory stop under <u>Terry v. Ohio</u>, 392 U.S. 1 (1968), "requires 'some minimum level of objective justification'" (quoting <u>INS v. Delgado</u>, 466 U.S. 210, 217 (1984))); <u>Brown</u>, 433 U.S. at 51 (holding that stop of pedestrian requires reasonable, articulable suspicion of criminal activity); <u>Prouse</u>, 440 U.S. at 663 (holding that stop of automobile requires reasonable, articulable suspicion of criminal activity); <u>Leeth v. Commonwealth</u>, 223 Va. 335, 340, 288 S.E.2d 475, 478 (1982) (citing <u>Brown</u>, 443 U.S. at 51) (holding that stop of automobile requires reasonable, articulable suspicion of criminal activity); <u>Simmons v. Commonwealth</u>, 217 Va. 552, 554, 231 S.E.2d 218, 220 (1977) (citing <u>Terry</u>, 392 U.S. at 27) (holding that stop of pedestrian must be supported by reasonable, articulable facts of criminal activity); or (2) an explicit, neutral plan limiting the

discretion of the officers in the field.  See, e.g., <u>Michigan Dep't of State Police v. Sitz</u>, 496 U.S. 444, 453 (1990) (approving stop at traffic checkpoint selected pursuant to guidelines and stopping every vehicle); <u>United States v. Martinez-Fuerte</u>, 428 U.S. 543, 559 (1976) (approving permanent immigration checkpoint stops involving limited discretionary enforcement activity); <u>Simmons v. Commonwealth</u>, 238 Va. 200, 204, 380 S.E.2d 656, 658-59 (1989) (explaining that roadblock stops "must be undertaken pursuant to an explicit plan or practice which uses neutral criteria and limits the discretion of the officers conducting the roadblock"); <u>Lowe</u>, 230 Va. at 352, 337 S.E.2d at 277 (approving roadblock stop employing neutral criteria and limiting officers' discretion).

Prior to today, the Supreme Court of the United States and Virginia courts have approved seizures without any objective, particularized suspicion of wrongdoing in only two contexts. First, in <u>Michigan v. Summers</u>, 452 U.S. 692, 705 (1981), the Court held that police could, without objective suspicion, detain the occupant of a house during a search conducted pursuant to a valid warrant.  <u>See also</u> <u>Allen v. Commonwealth</u>, 3 Va. App. 657, 661-62, 353 S.E.2d 162, 165 (1987) (applying <u>Summers</u> to substantially identical facts).  The Court explained that the state's interest in officer safety outweighed the "incremental intrusion on personal liberty [caused by the defendant's detention] when the search of a home has been authorized by a

valid warrant."  Summers, 452 U.S. at 703.

Second, courts have held that police may, without objective suspicion, order occupants of a lawfully stopped car to perform certain actions.  In Pennsylvania v. Mimms, 434 U.S. 106, 110–11 (1977) (per curiam), the Court held that police may order the driver of a lawfully stopped car out of the vehicle.  The Court reasoned that the important value of officer safety outweighed the "mere inconvenience" to the driver, an "additional intrusion [which] can only be described as de minimis."  Id. at 111.  The Court explained as follows:  "The police have already lawfully decided that the driver shall be briefly detained; the only question is whether he shall spend that period sitting in the driver's seat of his car or standing alongside it."  Id.  In a series of decisions, this Court has applied Mimms to similar orders by police, including orders for passengers to step out of stopped vehicles.  See Stanley v. Commonwealth, 16 Va. App. 873, 875, 433 S.E.2d 512, 513 (1993) (citing, inter alia, Mimms, 434 U.S. at 111); Thompson v. Commonwealth, 16 Va. App. 478, 481, 431 S.E.2d 72, 74 (1993) (citing Hatcher v. Commonwealth, 14 Va. App. 487, 491–92, 419 S.E.2d 256, 258–59 (1992)); Hatcher, 14 Va. App. at 492, 419 S.E.2d at 259; Bethea, 14 Va. App. at 478, 419 S.E.2d at 251–52.

Finally, in Maryland v. Wilson, 117 S. Ct. 882, 884 (1997), the United States Supreme Court extended the Mimms rule to passengers.  The Court reasoned that, "as a practical matter, the

passengers are already stopped by virtue of the stop of the vehicle." Wilson, 117 S. Ct. at 886. The Court held that the state's weighty interest in preventing violence to police outweighed the minimal "additional intrusion" on a passenger's rights. Id.

In the Summers and Wilson lines of cases, the detention of the defendant represented an incremental, additional intrusion following an antecedent search or seizure based on probable cause or reasonable suspicion, such as the execution of a valid search warrant or lawful stop. The first facet of the detentions approved in the Summers and Wilson lines of cases is that the challenged seizure rests on an antecedent determination of probable cause or reasonable suspicion. See Wilson, 117 S. Ct. at 884 (holding that the Mimms rule "that a police officer may as a matter of course order the driver of a lawfully stopped car to exit his vehicle[] extends to passengers as well"); Summers, 452 U.S. at 703 ("The existence of a search warrant . . . provides an objective justification for the detention."); Mimms, 434 U.S. at 109 ("[W]e . . . deal only with the narrow question of whether the order to get out of the car, issued after the driver was lawfully detained, was reasonable and thus permissible under the Fourth Amendment."); Harris v. Commonwealth, __ Va. App. __, __, __ S.E.2d __, __ (1998) (citing Wilson, 117 S. Ct. at 886) ("Following a lawful traffic stop, the Fourth Amendment permits the police to order the passengers to get out of the car pending

the completion of the stop."); Stanley, 16 Va. App. at 875, 433 S.E.2d at 513 (citing, inter alia, Mimms, 434 U.S. at 111) ("In the context of the lawful stop of an automobile, the balancing of these interests may permit the police to require both the driver and any passengers to step out of the vehicle."); Thompson, 16 Va. App. at 481, 431 S.E.2d at 74 (citing Hatcher, 14 Va. App. at 491–92, 419 S.E.2d at 258–59) ("Upon the lawful stop of an automobile, we have recognized that the balancing of these interests may permit the police to require both the driver and any passengers to step out of the vehicle."); Hatcher, 14 Va. App. at 492, 419 S.E.2d at 259 ("If a driver's maneuvers give rise to probable cause to believe that a traffic infraction has occurred, then effecting a brief detention that includes not only the driver and his car but his passengers as well, seems a legitimate law enforcement goal."); Bethea, 14 Va. App. at 478, 419 S.E.2d at 251–52 ("While Mimms involved the driver of the vehicle, the principles upon which the decision is based logically extend to encompass a passenger in a lawfully detained vehicle."); see also New York v. Class, 475 U.S. 106, 117–18 (1986) (describing one of the three factors in Summers and Mimms as the existence of "some probable cause focusing suspicion on the individual affected by the search").[1]

_____

[1] In three cases, Virginia courts have approved police orders for the occupant of a vehicle to perform certain actions on the basis of reasonable, articulable suspicion. See Bethea v. Commonwealth, 245 Va. 416, 419–20, 429 S.E.2d 211, 213 (1993) (criticizing this Court's Mimms-based reasoning, but approving order to passenger to get out of the vehicle because it was based

The second facet of the detentions approved in the <u>Summers</u> and <u>Wilson</u> lines of cases is that the seizures at issue were minimal incremental intrusions <u>cumulative to the search or seizure already supported by probable cause or reasonable, articulable suspicion</u>.  See <u>Wilson</u>, 117 S. Ct. at 886 (reasoning that "the additional intrusion on the passenger is minimal"); <u>Summers</u>, 452 U.S. at 703 ("[T]he detention represents only an incremental intrusion on personal liberty when the search of a home has been authorized by a valid warrant."); <u>Mimms</u>, 434 U.S. at 109 ("We think this additional intrusion can only be described as <u>de</u> <u>minimis</u>."); <u>Harris</u>, __ Va. App. at __, __ S.E.2d at __ ("This authority over passengers at a lawful traffic stop is deemed a `reasonable' seizure under the Fourth Amendment because the `weighty [public] interest in officer safety' during traffic stops, which `may be dangerous encounters,' sufficiently outweighs the minimal additional intrusion upon the private interests of passengers, who `are already stopped by virtue of the [lawful] stop of the vehicle.'" (quoting <u>Wilson</u>, 117 S. Ct.

on reasonable, articulable suspicion); <u>Pryor v. Commonwealth</u>, 17 Va. App. 117, 118-19, 435 S.E.2d 417, 418-19 (1993) (<u>en</u> <u>banc</u>) (reciting facts justifying order for passenger to get out of car, and specifically disavowing reliance on our <u>Bethea</u> and <u>Hatcher</u> line of cases); <u>Woodson v. Commonwealth</u>, 14 Va. App. 787, 792-94, 421 S.E.2d 1, 4-5 (1992) (explaining <u>Bethea</u> analysis, but ultimately "find[ing] that the evidence was sufficient to support a reasonable suspicion that [the defendant] was involved in criminal activity"), <u>aff'd on other grounds</u>, 245 Va. 401, 429 S.E.2d 27 (1993) (holding that defendant was not seized within the meaning of the Fourth Amendment by the police order to place his hands on the steering wheel because he did not comply).

at 885-86) (alterations in Harris)); Hatcher, 14 Va. App. at 491, 419 S.E.2d at 259 ("Here, appellant was not ordered to exit the vehicle but to remain beside it while Officer Reetz conducted his brief follow-up investigation following his detention of the car and its occupants. As was the case in Mimms, the intrusion on appellant's privacy rights and freedom of movement was de minimis [sic] . . . ."); Bethea, 14 Va. App. at 478, 419 S.E.2d at 252 ("To comply with the request, the passenger need only exit the vehicle, an act that amounts to no more than a mere inconvenience. Like the driver, the passenger 'is being asked to expose to view very little more of his person than is already exposed.'" (quoting Mimms, 434 U.S. at 111)). In the two cases which did not discuss the minimal, incremental nature of the seizure, the seizure was not challenged by the defendant, and we merely explained the permissibility of the order to exit the vehicle before reversing on other grounds. See Stanley, 16 Va. App. at 875, 433 S.E.2d at 513-14; Thompson, 16 Va. App. at 481, 431 S.E.2d at 74.

In stark contrast, this case has none of the distinguishing features of Wilson, Summers, Mimms, or the Virginia cases applying them. Prior to ordering appellant to the ground, Duff had made no valid, antecedent determination of reasonable suspicion or probable cause with respect to appellant. Instead, as the Commonwealth concedes, the police had no individualized suspicion of appellant whatsoever. In addition, Duff's seizure

of appellant was not an additional increment of intrusion incident to an otherwise justified search or seizure of appellant, see Mimms, 434 U.S. at 111, appellant's home, see Summers, 452 U.S. at 701, or a vehicle, which incidentally and necessarily intruded on appellant's mobility. See Wilson, 117 S. Ct. at 886. Duff's order to appellant to lie on the ground was the seizure, and it was not conducted as a component part of any legal search or seizure. Finally, Duff's seizure of appellant cannot reasonably be described as "a mere inconvenience," Mimms, 434 U.S. at 111, "minimal," Wilson, 117 S. Ct. at 886, or "de minimis." Hatcher, 14 Va. App. at 491, 419 S.E.2d at 259. Rather than being ordered to step out of his car or to remain in his house, appellant was ordered to lie face down on the sidewalk with his arms extended from his body. As opposed to the circumstances addressed in Wilson, Summers, and Mimms, Duff did not order appellant to perform a commonplace action like stepping out of his car but instead ordered appellant to submit to complete police control.

Balancing the individual's right to be free from arbitrary government intrusions against society's countervailing interest in preventing and detecting crime and in protecting its law enforcement officers, see Brignoni-Ponce, 422 U.S. at 878, I would hold that Duff's seizure of appellant required reasonable, articulable suspicion of appellant's involvement in criminal activity. "In the absence of any basis for suspecting appellant

of misconduct, the balance between the public interest and appellant's right to personal security and privacy tilts in favor of freedom from police interference."  Brown, 443 U.S. at 52; see also Moss v. Commonwealth, 7 Va. App. 305, 308, 373 S.E.2d 170, 172 (1988) (citing Brown, 443 U.S. at 52).  The majority's resolution of the balance in favor of police power violates the "central concern in balancing these competing considerations": "to assure that an individual's reasonable expectation of privacy is not subject to arbitrary invasions solely at the unfettered discretion of officers in the field."  Brown, 443 U.S. at 50-51 (citing Prouse, 440 U.S. at 654-55; Brignoni-Ponce, 422 U.S. at 882).  Given the Commonwealth's concession that Duff did not have reasonable, articulable suspicion to seize appellant, I would hold the seizure unreasonable.

The majority lists several facts in support of the officers' fears for their safety, including the number of people at the scene, the reputation of the area for violence, and the nature of the crime.  These factors, however, are relevant only to a determination of whether a seizure is supported by reasonable, articulable suspicion.[2]  They are of no consequence here because

[2]The majority cites Brown v. Commonwealth, 15 Va. App. 232, 421 S.E.2d 911 (1992), and Logan v. Commonwealth, 19 Va. App. 437, 452 S.E.2d 364 (1994) (en banc), in support of the factors it lists.  In Brown, we held that an officer's characterization of the park where the defendant was arrested as an "open drug market" was admissible as evidence of possession of cocaine with intent to distribute, 15 Va. App. at 235, 421 S.E.2d at 913, but parenthetically noted in the footnote cited by the majority that "the defendant's presence in a high crime area, standing alone, does not provide the requisite degree of suspicion to justify an

the majority does not premise its holding on the ground that the officers had reasonable suspicion to order appellant to lie down. Instead, it holds "[u]nder the reasoning of Summers and Wilson" that the officers could seize appellant notwithstanding the fact that "[t]he officers lacked reasonable suspicion or probable cause to believe appellant was engaged in criminal activity and did not have an arrest warrant for the two target individuals."

In his dissent in Wilson, Justice Stevens wrote, "How far this ground-breaking decision will take us, I do not venture to predict. I fear, however, that it may pose a more serious threat to liberty than the Court realizes." 117 S. Ct. at 890. Today, the majority takes the step foreseen by Justice Stevens and expands the reasoning of Wilson far beyond its limited context. The majority's holding that police may seize individuals without reasonable suspicion or probable cause represents a radical departure from well-established Fourth Amendment principles found in the prior decisions of the Supreme Court of the United States as well as the courts of Virginia. Accordingly, I dissent.

---

investigatory stop." Id. at 234 n.1, 421 S.E.2d at 912 n.1. In Logan, we held that a broken rear vent car window constituted reasonable, articulable suspicion of criminal activity. Logan, 19 Va. App. at 441-42, 452 S.E.2d at 367-68.